THE STATE OF KANSAS, ex rel. SAMUEL E. BARTLETT, as County Attorney, etc., *Appellee*, v. NICHOLAS WEBER et al., as Partners, etc., *Appellants.*

No. 18,236.

SYLLABUS BY THE COURT.

1. ELECTRIC WIRES—*Along Public Highway—Legal Use of Highway.* The transmission of an electric current by wire on a highway in order to furnish light, heat and power to the inhabitants residing along such electric line is a legal and proper use of a highway.

2. —— *No Necessity for Franchise or Special Legislation.* A person may build and maintain such a line on a rural highway without having obtained a franchise or special license from any officer, providing it is done in a way that will not seriously impede or endanger public travel or unnecessarily interfere with the reasonable use of the highway by other members of the public and there is no invasion of the rights of the owners of abutting lands.

3. —— *Must Not Interfere with Proper Use of Highway.* If such a line should be so built and maintained as to substantially interfere with the legal and proper use of the highway by others of the public, or if the appliances set up and used in the highway constituted a nuisance, the state, at the instance of the attorney-general or county attorney, might maintain an action to enjoin the continuance of the nuisance or the further illegal use of the highway.

Appeal from Ellsworth district court. Opinion filed November 9, 1912. Reversed.

*Ira Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellants.

*John S. Dawson,* attorney-general, and *Samuel E. Bartlett,* county attorney, for the appellee; *Thomas L. Bond,* of Salina, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by the state to enjoin appellants, Nicholas Weber and John Weber, partners doing business as The Wilson Electric Light Company, from constructing an electric line from the city of Wilson, in Ellsworth county, to the city of Dorrance, in Russell county. Under a franchise from the city of Wilson appellants had built and were operating an electric light plant in that city. Recently the city of Dorrance, located about seven miles from Wilson, authorized appellants to construct and operate an electric light plant there, and they were proceeding to extend their line to Dorrance and had expended a large sum of money to that end before this action was begun. On a preliminary hearing a temporary injunction was granted, and upon the final trial evidence was offered tending to show that appellants were constructing an electric line on the public highway between the two cities, placing the poles near the fence line and about two feet from the outside of the highway. At this stage of the trial, and when an objection had been sustained to evidence tending to show that the proposed line would not prevent or impede travel or the full use of the highway, counsel for defendants made the following statement:

"In this case, the defendants have authority from the city of Wilson, as shown by the ordinance which has been read in evidence. The defendants have a contract to furnish electricity for the purpose of light, heat and power to the city of Dorrance. The plant of the defendants is located in the city of Wilson. The distance between the two cities is about seven and one-

half miles.   The defendants commenced the erection
or were about to erect, when they were enjoined, an
electric line from their plant in the city of Wilson into
the city of Dorrance, Kansas, and were doing the same
according to the most approved appliances and re-
quirements to make the same a safe electric line for
the conducting of electricity.   That the electric cur-
rent was to be carried on a suitable wire on poles be-
tween these points, the poles being 133 feet 10 inches
apart, except at the public crosings, where the poles
would be erected on each side of the crossings with the
most approved form of baskets underneath the wires,
and within two and a half feet of the wires at the
public crossings for the purpose of catching the wires
and preventing them from falling in the case of break-
age; that the poles being erected would be within about
a foot to three feet of the margin and within the high-
way and they would be so placed as not to be in the
way of public travel or in any manner to interfere with
the use of the highway for travel, transportation or
transfer along the highway.   That the voltage carried
would be 2300 volts and that the height of the poles
would be such that the wires would extend $22\frac{1}{2}$ feet
above the surface of the ground, and that the poles on
each side of the road crossings would be well guyed
and all the poles and all the work would be done in a
substantial manner and erected according to the best
and most approved methods for safe use of electricity
for light, heat and current.   That the defendants have
such power and authority to erect this electric line as
is given them by law and the permission of the said
two cities as well as the permission of the adjacent
landowners to the roads between the cities of Dorrance
and Wilson, but has no other authority except as men-
tioned.   That it is the opinion of counsel of defendants
that the supreme court would take judicial notice of
the question of whether or not the electric line would
be dangerous and a nuisance, should the case ever
reach that court.   That the city of Wilson has a pop-
ulation of 981 inhabitants and the city of Dorrance
has a population of 300 inhabitants.   That the de-
fendants are a partnership and that the partnership
is amply responsible, financially."

12—88 Kan.

The trial court held that the facts stated by counsel did not constitute a defense and upon that statement rendered a judgment making the temporary injunction permanent.

The contention of appellee is that the electric line in question constituted an obstruction of the highway, or at least that the placing of it there was an exceptional use of the highway and that such use can not be made of it without express legislative authority. The state has sole control of its highways and the legislature has full power, within constitutional limitations, to regulate the use of them. This power may be delegated by the state and to some extent is delegated to boards, commissions and municipal authorities. Specific authority to erect or maintain this electric line has not been given to appellants, but is a special grant necessary? The transmitting and carrying of light, heat and power over and along a highway for distribution among consumers is a public use as well as one of the proper uses of a highway. (*La Harpe v. Gas Co.*, 69 Kan. 97, 76 Pac. 448; *McCann v. Telephone Co.*, 69 Kan. 210, 76 Pac. 870, 66 L. R. A. 171.)

Being a public use and the line a public utility it is, of course, subject to the control of the public, and the legislature might well prescribe the conditions upon which a highway should be used for that purpose just as it has regulated the use of automobiles, telephones and other methods of transportation, traffic and communication on the highways. This highway was established under the statutory rules prescribed by the legislature. Having been so established it was open for any proper public use which the people might choose to make of it. A natural person needs no special license or grant of authority in order to use a highway for any of the purposes for which it was established. The legislature might have prescribed the

conditions on which persons might transmit and transport light, heat and power along a highway, but it has not done so, and in the absence of a statutory regulation there is no reason why they may not be transmitted and transported over the highway as freely as storage batteries or other appliances used in making light, heat and power may be carried in a wagon over the same highway.

It is argued that because express authority to make such use of the highway has been conferred on corporations there is an inference that special legislative permission is necessary to that use by any one. Special authority is given to a corporation not because a grant is essential to the legal use of a highway for highway purposes by the people, but the grant is made in part to confer on an artificial being some of the rights which natural persons possess. In vesting the corporation with some of the powers and duties of a natural person, and which its own shareholders enjoy without a grant, the legislature provides how these duties and powers shall be exercised by the corporation and the conditions on which it may use the streets and highways in the conduct of its business. The fact that a franchise is essential to the exercise of its limited powers on a highway does not warrant the inference that legislative permission is necessary for the individual to use the highway for any of the purposes for which it was intended.

It is true that cities grant rights and prescribe the conditions upon which individuals and corporations may use the streets for certain purposes, but that does not militate against the view that an individual may use the rural highways for the same purposes without special authority. The power to control the streets has been delegated by the state to the cities under which they may make grants of public rights for public purposes; but where the power has not been

delegated and the state has prescribed no conditions limiting or regulating the use of the highway the people are at liberty to use it for travel, transportation and communication, subject to the condition that such use does not interfere with other lawful uses of the street nor invade the rights of the owners of abutting lands. The cases cited by appellee relate mainly to the question whether the right of eminent domain may be exercised without special authority and whether there may be a use of the highway for such a purpose without the consent of the owners of the abutting lands. These questions are not in controversy here, as the consent of the abutting owners has been obtained, and it was not proposed to build the line over the lands of others or elsewhere than along the highway. It is insisted that no one can be given a special or exceptional use of a highway except by special grant from the sovereign power, but if this claim were conceded it is clear that the proposed use is a legal one which fairly comes within a highway easement. It is a new use, it is true, but not an exceptional one. On the contrary, it is one of the natural and legitimate uses to which a highway may be devoted. In *The State v. Natural-gas Co.,* 71 Kan. 508, 80 Pac. 962, it was contended that the building and burying of pipe lines in the highway for the transportation and distribution of gas for light, heat and power was an exceptional use which could not be exercised without a franchise from the state. The court, however, held against that view, saying that:

"The use is not exceptional. The transportation of commodities on the highway is one of the uses for which it has always been maintained. The means, however, used by the gas company in the transportation of its gas are exceptional. A demand for this method has not heretofore existed in this state; but shall this fact alone deprive the defendant of the use of the highway for a usual and proper purpose, unless such use necessarily obstruct, seriously inconvenience or endanger public travel?" (p. 510.)

The court then made the following quotation from *McCann v. Telephone Co.*, supra:

" 'The use is not to be measured by the means employed by our ancestors, or by the conditions which existed when highways were first devised. The design of a highway is broad and elastic enough to include the newest and best facilities of travel and communication which the genius of man can invent and supply.' (p. 213.)" (p. 510.)

The court then added:

"The public highway is maintained for the transportation of the commodities of the country, and the means employed for such purpose need only be such as not to interfere with public travel to the extent hereinbefore stated." (p. 510.)

The fact that the transmission of the electric current over wires is a proper use and that an individual may use the highway for this purpose without special authority does not mean that he is privileged to do it in a way that will unreasonably interfere with the use of the highway by other members of the public. The highway belongs to the public and all of the public is entitled to the use of it. However, everyone must use it in a reasonable manner so as not to impede travel, transportation or communication, or interfere with its reasonable use by other citizens. If the methods of use adopted by appellants should unreasonably incommode others or render the proper use of the highway by others dangerous, or if the appliances used by them should constitute a nuisance, the state, at the instance of the attorney-general or the county attorney, could, under the general authority given them, maintain an action to enjoin the unlawful use. The same is true, however, as to pedestrians or of persons using ordinary vehicles; for while they may temporarily stop on the highway they are not permitted to stand an unreasonable length of time, and if they should unnecessarily block the highway or interfere

with its reasonable use by others they, too, might be enjoined.

What is an unreasonable use of the highway and whether the means and appliances employed by those using it constitute an obstruction or nuisance is ordinarily a question of fact. All who use it must respect the rights of the public. The right of the public to the use of it is subject to reasonable and necessary limitations. Every use may affect others to some extent, but not every use which may cause some inconvenience to others can be regarded as a nuisance or an unreasonable use which would justify an action by the state to enjoin the use. Unless there is something more than a technical obstruction, something which amounts to a substantial interference with the rights of others, there is no ground for an injunction.

According to the record presented here there is no unreasonable interference with the rights of any one on the highway in question. It appears that the line is being erected with the best of materials, in the safest and most approved manner, and is being constructed so that it will not interfere with travel, transportation or any other legitimate use of the highway. It may be that it would be the better policy for the legislature to regulate the building of such lines on rural highways and place the control of them in some public officer who would fix the conditions on which the line should be constructed and maintained, but until such provision is made any person may, without special permission, make a reasonable use of the highway to transmit electric currents upon wires for the purpose of furnishing to consumers light, heat or power, providing it is done so as not to constitute a nuisance or interfere with the rights of other members of the public.

The judgment is reversed and the cause remanded for further proceedings.