No. 31,234

EDNA PRICE, *Appellee,* v. THE UNITED TELEPHONE COMPANY, *Appellant.*

No. 31,235

EARL H. PRICE, *Appellee,* v. THE UNITED TELEPHONE COMPANY, *Appellant.*

(26 P. 2d 569.)

Opinion filed November 11, 1933.

*B. F. Napheys, Jr.,* and *Karl B. Rugh,* both of Abilene, for the appellant.
*W. D. Vance* and *Fred Emery,* both of Belleville, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: These two actions were tried together in the court below and presented together here. The plaintiff, Edna Price, seeks to recover for personal injuries sustained when the car which she

was driving collided with a telephone pole of the defendant, and both plaintiffs seek to recover for the wrongful death of their daughter in the same casualty. The jury answered special questions and returned verdicts for plaintiffs. Defendant has appealed, and contends, (1) that negligence on its part was not shown, and (2) that the collision of the automobile with the telephone pole was not the proximate cause of the injury. Other questions are argued, but it may not be necessary to discuss them.

The principal facts are not seriously controverted, and may be stated as follows: A township road runs north from the city of Republic. About a mile north of the city it is intersected by an east-and-west county road. For more than twenty years prior to the casualty which gives rise to this lawsuit defendant had maintained and operated a telephone line along the south side of the county road to the intersection from the east where it crossed the road to the north or northwest. Prior to the fall of 1928 the intersection of the two roads above mentioned was the ordinary square intersection of two highways, but in 1928, under the direction of the county engineer, the southeast corner of the intersection was rounded. This was done by first obtaining from the landowner an easement for the new road rounding the corner. Across the right of way thus obtained a roadway was laid out on a curve with a 200-foot radius connecting the township road south of the old intersection with the county road east of it. The old intersection was, of course, left for north-and-south and east-and-west traffic. This left a triangular tract southeast of the old intersection and between that and the new curved road connecting the two highways. One of defendant's telephone poles was in this triangular tract, and the next one east of that was about the middle of the new curved road. About the time this work was commenced the county engineer called the manager of the telephone company and told him of the work to be done and that there were telephone poles in the way. He replied he would send men to move them. That afternoon he sent men, who moved the pole that was in the new curved road. There was evidence tending to show that the men did not have time that afternoon to move the pole in the triangular tract above mentioned. It is what is spoken of as a "key" pole, the line changing there to the north or northwest, and it being guyed with a guy wire, for which reasons it would take more time to move it. The county engineer

told the workmen there was no hurry about moving that pole, for the reason that it was not in the traveled portion of the highway. He testified that the men there agreed to move it later. About that time considerable road work was being done in the county. The county engineer made several requests of defendant's manager to have poles moved, and always received good coöperation and prompt service. The manager of the telephone company testified that he received several requests from the county engineer for the moving of poles, and always complied with them promptly. At the time of the trial of this action, about five years after the work was done on the corner, he had no recollection of any request having been made of him for the removal of this corner pole. It is not contended that a written request was made for the removal of the pole in the triangular area, nor does the evidence show that it was the practice to make requests in writing for the removal of poles for road improvement. No record was kept by the county engineer of what poles he requested moved, and none was kept by defendant's manager of poles removed at the request of the county engineer. Before the improvement of the corner in 1928 there were ditches, varying perhaps from a foot to a foot and a half deep, extending east and south from the southeast corner of the intersection. At the time the road was improved in 1928 these ditches were filled, or nearly so. The curve was so constructed that the inside of the curve was lower than the outside, where there was a slight ridge of dirt, leaving a drainage for the curved road to the southeast, where there was a culvert which carried the water to one of the ditches along the county road. The triangular area was left practically level, except for the ridge of dirt along the outer edge of the curve, and at the time of the casualty was sparsely covered with grass and weeds, except the corners where they had been rounded somewhat by travel. At the northwest corner of the intersection there was a hedge fence extending north, and another one west, from the corner. These were kept trimmed down for a distance of from forty to fifty feet north and west from the corner, to enable travelers approaching the intersection from the west better to see cars coming from the north, or those approaching from the north to see cars coming from the west.

The intersection was maintained as above described from the fall of 1928 until after September 4, 1931—the date of the casualty which gives rise to these actions. Frequently within that time inspectors of defendant examined its poles and lines, and knew that

one of its poles with the guy wire was situated in the triangular area above described. Neither the county engineer who supervised the improvement of the intersection in 1928, nor his successor in office, made any complaint after that work was done about the pole and guy wire remaining where they were.

Plaintiffs lived on a farm about a mile and a quarter north of this intersection and had lived there for nine years. They frequently went to Republic, were familiar with the road and with this intersection, and with the location of defendant's telephone pole near the southeast corner of the intersection, both before it was improved by the rounding of the southeast corner in 1928 and since that time. The county road at this point was down grade from a point some distance east of the intersection, through it, and west a quarter of a mile or more to a bridge across a creek. From the north to the intersection, for a short distance, the township road was slightly upgrade and from the intersection south was slightly downgrade. On the day of the casualty, shortly after one o'clock in the afternoon, the plaintiff, Edna Price, started to drive from her home to Republic. The car she was driving was owned by plaintiffs, and she had driven it frequently and had been driving cars for more than fifteen years. Her daughter, fourteen years of age, was with her, riding on the seat beside her. As she approached this intersection, some little distance before she reached it and while driving at about thirty miles per hour, she looked to the west for cars or dust from cars approaching. She could sometimes see a cloud of dust better than she could see a car. She saw none and drove on to the intersection, where she slowed down to perhaps fifteen miles an hour. Just after entering the intersection she observed a car coming rapidly from the west, driving about the middle of the highway. Her car was equipped with four-wheel brakes, in good condition, but she thought she did not have time to stop and did not apply her brakes. She turned her car to her left toward the east, and perhaps speeded up a little, hoping to avoid the approaching car. The car coming from the west was driven by a young man, Mr. Madsen. Three other young men were riding in the car with him. They had been driving at from sixty to seventy miles an hour. When they came in sight of the intersection, one of the men called Madsen's attention to it and he took his foot off of the gas accelerator and the car slowed a little. When he saw the car Mrs. Price was driving in the intersection he put on his brakes hard enough that

the wheels slid on the road for about 100 feet and entered the intersection at about 40 miles per hour. He tried to turn south at the intersection, but was going too fast to make the turn. The result was that his car collided with Mrs. Price's car, and at a point about ten feet north and perhaps twenty to thirty feet west of defendant's telephone pole. Neither car appears to have been hurt seriously by this impact. They separated, the Madsen car going southeast under the guy wires south of the telephone pole, which seriously damaged the top of the car, and finally stopped about 200 feet almost directly east of the pole. The course of Mrs. Price's car was changed more to the east. Tracks on the ground indicated that the tires were moving partly sideways rather than straight ahead. She was trying to guide the car, but did not see, or think of, the telephone pole. The front of her car missed the telephone pole, but about the center of the car struck the pole with much force. Glass was broken, the side of the car damaged, the handle on the door torn off and the door thrown open, plaintiff's daughter was catapulted from the car a distance of about twenty feet to the edge of the curved road, and the car itself made a semicircle in the road and stopped, facing west, on the north side of the county road, a little east of the telephone pole. The daughter died in a few hours from injuries sustained, and Mrs. Price was seriously injured.

Plaintiffs settled with Madsen both for Mrs. Price's injuries and for the death of their daughter, but in doing so specifically reserved any right of action they had against the telephone company or others liable for the damages. The court in its instructions properly told the jury to take that settlement into account if any judgment were rendered for plaintiffs. It is not contended that the judgments in these cases, aggregating $4,000, are excessive if plaintiffs are entitled to recover.

The accompanying plat shows more clearly the situation as it existed just after the casualty. Its scale as reproduced here is 30′=1″. The letter A shows the location of the telephone pole in question, and B the anchor of the guy wire 12′ 3″ south of it; C is a telephone pole at the northwest corner of the intersection; D is the culvert on the inside of the curved highway for the drainage of the curved road and perhaps a part of the intersection; E is approximately at the place where the two cars collided, although some witnesses placed it a little nearer to the telephone pole; F is the

place to which the child's body was thrown from the impact of plaintiff's car with the telephone pole; G marks the place plaintiff's car came to a stop, facing west; and H where the Madsen car came to a stop; I shows the location of drainage ditches along the sides of the road. The two lines about the triangular tract inclose the approximate area not ordinarily used by the traveling public and on which there was a growth of weeds and grass. The pole was about eight feet south of the south line of travel on the county road, about twenty feet east of the east line of travel on the township road, and about the same distance from the west line of travel on the curve.

It will be noted that neither of the cars which collided was using this rounded curve. Plaintiff's car came from the north, and Mrs. Price planned to drive on south across the intersection. The Madsen car came from the west, and its driver intended to proceed eastward across the intersection. The collision was not affected in any way by this curved roadway. We are unable to see that it had any effect on the liability of the parties, unless the improvement at the time it was made left the telephone pole at a place where it discommoded the traveling public.

Turning now to the legal question argued: Was defendant negligent in maintaining its pole in the location it was on the day of the casualty? Our statute (R. S. 17-1901) provides:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, . . . upon and across any of the public roads, . . . of this state, in such manner as not to incommode the public in the use of such roads, . . . "

And the next section (R. S. 17-1902) provides:

"Telephone companies shall have all the rights and powers conferred and be subject to all the liabilities imposed by the general laws of this state upon telegraph companies."

Under these statutes the telephone company was authorized to set its poles upon or in the highway if, in doing so, the poles were not so placed as to incommode the public in the use of such roads. Under the authorization granted by this statute telegraph and telephone companies have placed their poles near the side of, but within, many of the public roads throughout the state. Their right to do so, if they are so placed as not to incommode the public in the use of the roads, is fully recognized under the statutes above quoted and by the former decisions of the court. *(McCann v. Telephone*

*Co.,* 69 Kan. 210, 76 Pac. 870; *Wichita v. Telephone Co.,* 70 Kan. 441, 78 Pac. 886; *Telephone Co. v. Concordia,* 81 Kan. 514, 106 Pac. 35; *State, ex rel., v. Weber,* 88 Kan. 175, 127 Pac. 536. See, also, *Postal Tel.-Cable Co. v. Depew, etc., Conduit Co.,* 222 N. Y. S. 104, as to similar rights under federal statutes.) It is not seriously contended in this case that prior to the improvement of this intersection in 1928 the defendant was guilty of negligence in maintaining its telephone pole where it was located, marked "A" on the plat, but it is argued on behalf of appellees that when the corner was rounded in 1928 and defendant was requested by the county engineer to remove the pole, and its employees promised to do so at a later date, it became and was thereafter negligent in maintaining it at the place where it then was located. But it will be remembered that the county engineer told defendant's workmen that there was no hurry about moving this pole, for the reason that it was not in the traveled portion of the highway, and it is not clear from the testimony, either of the county engineer or of defendant's manager, that any request was made of defendant's manager for the removal of this pole, and it remained there without objection from the county engineer, or anyone, until after this collision. Sometime thereafter, and before the trial, it was removed, but in the meantime the two north corners of this intersection had been rounded, and whether the removal of the pole was because of the casualty which gave rise to this lawsuit, or for some other reason, is not disclosed. The question naturally suggests itself: If this pole were not in the portion of the highway used by the public for travel, or where it discommoded the public with such use of the highway, did the county engineer have any authority to request its removal? But since that question is not briefed and appears not to have been specifically ruled upon by the trial court, we shall give it no further attention. Naturally the telephone company had no authority under the statutes and cases above cited to place its poles where they would incommode the public in the normal and ordinary use of the highway. Whether a pole such as this, either near an intersection or at any other place along the highway, is so near the traveled portion of the highway as to incommode the traveling public, is frequently a question of fact for the jury. *(Phillippi v. Farmers' Mut. Telephone Co.,* [W. Va.] 168 S. E. 762. See, also, cases collected in the annotation 82 A. L. R. 395.) Here the pole was as much as six to eight feet south of the south line of the

traveled portion of the east-and-west highway, and approximately twenty feet east of the east line of travel of the north-and-south highway, and about the same distance from the nearest line of travel on the curved highway. The way to state it most favorably for plaintiff is to say that it was a question for the jury whether the pole was situated where it would interfere with or discommode the traveling public. On this point the following question was submitted to and answered by the jury:

"Q. Was the defendant's telephone pole located so it interfered with the usual and customary use of the highways surrounding it? A. No."

We feel compelled to hold, under the record in this case, and particularly under the finding of the jury above set out, that defendant was not guilty of negligence in maintaining its pole at the place in question.

Passing now to the question of proximate cause. Appellee correctly argues that the concurring negligence of two or more parties may be such that the negligence of each is a proximate cause of an injury. (*Pacific Telephone & Telegraph Co. v. Hoffman*, 208 Fed. 221.) This doctrine cannot be availed of here for two reasons: *First*, the defendant, under the record and the specific finding of the jury, was not guilty of negligence; and, *second*, it is clear that the collision of the two cars caused the Price car to be thrown against the telephone pole (*Eberhardt v. Telephone Co.*, 91 Kan. 763, 139 Pac. 416; *Wyatt v. Telephone Company*, 158 Va. 470, 163 S. E. 370). Madsen, if the cars collided by reason of his negligence (and we may assume that they did), would have been responsible for all injuries resulting to plaintiffs, not only that which occurred at the immediate time the cars collided, but the subsequent injuries when plaintiff's car was thrown or diverted from its course by that impact against the telephone pole. See *Mayer v. Mellette*, 65 Ind. App. 54, 114 N. E. 241, where the driver of a car at an intersection was forced against a telephone pole by the negligence of another car and recovered from the latter for the damages sustained.

While some other questions pertaining to trial errors are discussed, in view of the conclusion we have reached upon the principal points in controversy it is not necessary to determine them.

The judgment of the court below is reversed, with directions to enter judgment for defendant.

HUTCHISON, J., not sitting.