No. 35,060

THE CENTRAL KANSAS TELEPHONE COMPANY, INC., *Appellee*, v. THE KANSAS CORPORATION COMMISSION, ANDREW F. SCHOEPPEL, A. R. JONES and SAMUEL E. BARTLETT, as Members of said Commission, *Defendants* (THE COFFEY COUNTY RURAL ELECTRIC COÖPERATIVE ASSOCIATION, INC., *Appellant*).

(113 P. 2d 159)

Opinion filed May 10, 1941.

. *Matt Guilfoyle,* of Abilene, and *L. R. Hannen,* of Burlington, for the appellant.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell,* all of Topeka, for the appellee.

*Robert W. Hemphill,* of Norton, as *amicus curiae.*

The opinion of the court was delivered by

ALLEN, J.: The Coffey County Rural Electric Coöperative Association (hereinafter referred to as the rural electric) filed for approval with the state corporation commission plans, specifications and maps showing the location of a proposed power line. A hearing was had on the application, and thereafter on the petition of the Central Kansas Telephone Company, Inc. (hereinafter referred to as the telephone company), a rehearing was granted by the commission. Testimony was taken, the commission made findings of fact, and duly entered an order approving the application of the rural electric—the construction to be in accordance with the rules of the commission set forth in docket No. 1944. The telephone company appealed from the order of the commission to the district court of Coffey county. Upon the trial in the district court a judgment was entered holding the order of the commission was unlawful and remanding the case to the commission with directions "to promulgate reasonable rules and regulations covering inductive coördination and thereafter reconsider the application of appellee in the light of regulations covering inductive coördination." This appeal is from the order and judgment of the district court so entered.

The commission found that the rural electric was incorporated under the laws of Kansas for the purpose of furnishing electric energy to its stockholder members; that the construction of its facilities is financed by the United States through the Rural Electrification Administration; that the United States has a first mortgage on the property of the company to secure the cost of construction, and that the proposed lines of the rural electric will run along the highways of the state upon which are located lines of the telephone company. The telephone lines are grounded lines and will give service substantially equal to that given on metallic circuits unless there is electric interference from some source. It was further found that the lines of the rural electric if constructed according to the plans, specifications and maps will cause inductive interference with the service of the telephone company, and will materially impair such

service and may render the telephone lines noncommercial; whether it will do so cannot be determined with certainty prior to the energizing of the power lines, but it is probable that it will do so. It was found that if the telephone lines which parallel the power lines are metallicized, the inductive interference will be greatly reduced if not entirely eliminated; that the expense of metallicizing the telephone lines will amount to about $7,000, and that it is not the policy of the Rural Electrification Administration to furnish money for that purpose.

Our statute G. S. 1935, 66-183, provides:

"All public utilities owning or operating wires for the transmission of telegraph or telephone messages or for the transmission of electricity upon, along, or across the streets, highways or public places in this state are required to so use, string and maintain such wires as to avoid unreasonable injury or interference from the wires of other utilities and to avoid unreasonable injury to and interference with the wires of other utilities, and the public utilities commission is given the power, and it is hereby made its duty, to prescribe reasonable rules and regulations with respect to the stringing and maintaining of wires in all cases where there is danger or possibility of unreasonable interference with or damage to the wires or service of one utility by those of another utility. . . ."

After quoting sections 66-183 and 66-184, the commission, in its findings, states:

"The question thus presented is: Does the commission have the power under the statutes quoted to refuse the approval of the plans of a power company for the construction of a transmission line across and along the highways of the state when the proposal is to construct the line in such manner that it will cause inductive interference to an extent that it will render grounded rural telephone lines constructed thereon noncommercial? . . .

"The commission is impressed with the argument of the protestants based upon the equities in the case, but it is reluctant to hold that the words 'or service' in the statutory provision just quoted are sufficient to confer upon the commission authority to deny the application on account thereof. No one can study the provisions of the statute involved with any feeling of assurance at the end that he has chosen the right path. There are few precepts to guide the commission. All the more, in this uncertainty, the commission is impelled to the belief that, until the courts have determined the matter, the commission should not assume the power. The commission holds as a matter of law that it may not withhold approval of the plans of the applicant for the reasons urged by the protestants."

On appeal to the district court it was contended that the order of the commission was unreasonable and unlawful. The district court, in a carefully written opinion in disposing of the question as to whether the order was unreasonable, stated that "the decision of the

commission as disclosed by the order is not so wide of the mark as to be outside the realm of fair debate, and therefore this court has no right to nullify the order on the ground that it was unreasonable."

The court ruled:

"The order of the commission is set aside as unlawful and case is remanded to commission with direction to promulgate reasonable rules and regulations covering inductive coördination and thereafter reconsider the application of appellee in the light of regulations covering inductive coördination."

In arriving at this conclusion, the district court, in its written opinion, stated:

"Applying the foregoing rules of construction to 66-183, G. S. 1935, this court interprets the statute to mean:

" 'That it is the duty of the State Corporation Commission to prescribe reasonable rules and regulations with respect to the stringing and maintaining of wires by all public utilities owning or operating wires for the transmission of electricity or telephone messages upon, along or across the highways in this state in all cases where there is danger or possibility of unreasonable interference with or damage to the wires or service of one utility by those of another utility and with respect to the support, maintenance, repair and reconstruction thereof.

" 'That the language "unreasonable interference with or damage to the service of one utility by the electrical wires of another utility," is broad enough to cover and does cover "inductive interference" caused by the maintenance of an electrical transmission line paralleling the telephone lines upon, along or across public highways in this state.

" 'While the telephone company has no exclusive right of occupancy to the highways under its franchise yet, appellee must so construct its electric transmission lines, under rules promulgated by the commission, that no unreasonable inductive interference to service of telephone company will be caused, if that can be done within the bounds of reasonable regulations.

" 'In case the interference may be avoided by installation of devices or other means with reasonable expense, it is the duty of the later company to adopt such means *as the commission may direct,* for the service of telephone customers is just as important as electric service is to electricity customers and it is just as logical to require the use of these devices by appellee on its lines as it is to require the telephone company to do so at its own expense, as following either line of reasoning it will mean added expense to the consumers of utility service.

" 'However, under any line of reasoning it is the commission's duty, in the first instant, to adopt regulations that will avoid unreasonable inductive interference if it is reasonably possible to do so.

" 'Upon oral argument before the court, counsel for all parties interested in this appeal stated that the wire stringing rules promulgated by the State Corporation Commission, pursuant to the statute, and as disclosed by docket 1944 of the commission, which the court has examined, did not cover, and do not now cover "inductive interference" but merely physical interference. . . . .

" 'It must be here noted it is not a question of the power of the commission to refuse to approve the application of appellee, but rather the power of the commission to regulate by rule interference with the service of one utility by the wires of another utility, caused by inductive interference or otherwise. . . .

" 'The findings of the commission which are accepted by the court, by agreement of counsel, as the facts of the case, show further that the lines of the appellee, as proposed to be constructed, will cause "inductive interference" to such an extent that the telephone service may be and will likely·be rendered noncommercial, and that other lines constructed by appellee in Coffey county have destroyed the commercial value of telephone lines.

" 'It appearing to this court that the statute in question requires the State Corporation Commission to enact reasonable rules and regulations which would cover "inductive interference" and that not having been done, the commission has not followed the procedural forms prescribed by the statute (66-183, G. S. 1935) and by reason thereof the order made by the commission is unlawful.' "

The journal entry of the judgment recites:

"Now, on this 1st day of July, 1940, being fully advised in the premises, the court finds: That the findings of fact made by the State Corporation Commission of the state of Kansas on the 21st day of February, 1940, in the said order from which an appeal was taken by the appellant, the Central Kansas Telephone Company, Inc., are supported by substantial and competent evidence, and are reasonable.

"That the provisions of section 66-183, G. S. for 1935, authorize, empower and direct the State Corporation Commission to prescribe reasonable rules and regulations with respect to the stringing and maintaining of wire in all cases where there is danger or possibility of unreasonable interference to the service of one utility by the lines of another; that electric transmission companies are bound by the provisions of law to so construct their electric transmission lines, under rules promulgated by the commission, that no unreasonable inductive interference to service of telephone companies will be caused, if such interference can be reasonably avoided or mitigated.

"That the conclusions of law made by the said commission upon the findings of fact, herein determined to be reasonable, are unlawful in that the same erroneously conclude that the said commission has no authority to prescribe rules and regulations for the prevention of unreasonable interference with or damage to the service of telephone utilities by the lines of electric transmission utilities traversing the same highways. That in so concluding the said commission has failed to carry out the duties imposed upon it by law in regard to such unreasonable interference to service; and the court further finds that the conclusions of law made by the said commission are unlawful in that the commission has not followed the procedural forms prescribed by the statute (Sec. 66-183, G. S. for 1935) by virtue of its failure to promulgate rules and regulations with respect to the stringing and maintaining of wires in all cases where such unreasonable interference is imminent.

"That by reason of the unlawfulness of the action of the commission, the

said order should be vacated and set aside insofar as the said conclusions of law are concerned."

Did the district court err in holding the order of the commission was unlawful?

Under our statute G. S. 1935, 66-183, the commission "is given the power, and it is hereby made its duty, to prescribe reasonable rules and regulations with respect to the stringing and maintaining of wires in all cases where there is danger or possibility of unreasonable interference with or damage to the wires or service of one utility by those of another utility. . . ." The trial court held this language is broad enough to cover inductive interference caused by the maintenance of an electrical transmission line paralleling the telephone lines upon, along or across public highways in this state.

In all cases where there is danger or possibility of unreasonable interference with or damage to the wires or service of one utility by those of another utility not only is the power conferred, but a duty is imposed upon the commission to prescribe reasonable rules and regulations with respect to the stringing of wires on and along the highways. The duty imposed is imperative. While the findings of the commission recite that the proposed lines of the rural electric will be constructed in accordance with the rules of the commission as published in docket No. 1944, it does not state the rules as promulgated cover the matter of unreasonable interference with the "service" of one utility by another utility that may result from the stringing of wires upon, along or across the highways of the state. We agree with the conclusion of the district court that interference of the "service" as used in the statute is broad enough to include inductive interference. Because the rules were not formulated on that question as provided by the statute, the district court held the order of the commission was unlawful. In that ruling we concur. We think it clear the mandate of the statute was not followed. We think the rules as to inductive interference should be formulated before a lawful order on the application of the rural electric could be entered. Should such rules be formulated as contemplated by the statute, and the application should thereafter be presented, we, of course, do not intimate the nature of the ruling or order of the commission that should be made thereon—that is a duty imposed on the commission.

The decision in this case neither involves nor implies any determination of the question of whether a telephone company which has

operated what is ordinarily. called a grounded system has thereby acquired any vested right in such use of the earth as part of the circuit, or is entitled to any superior or prior right by virtue of such . prior use. No question is now before us as to whether the power line companies should be required to bear part or all of the cost of me-tallicizing present grounded telephone systems in case other means of preventing inductive interference prove ineffective, nor whether the power lines should be required to install devices in addition to those now required in order to prevent injury to the telephone serv-ice. Such administrative questions are not raised by this proceed-ing. We are in no way here determining how far the commission may constitutionally go nor assuming to say how far it should go, in performing its administrative duties, in relation to such use of the earth in connection with the problem of inductive interference. We are simply holding, with the trial court, that under the statute the commission has full authority to deal with problems of service which include the problem of inductive interference, and that it has both the power and the duty to adopt and promulgate reasonable rules and regulations relative thereto. The commission itself does not contend that its present general rules and regulations which make reference, largely descriptive in character, to inductive interference, deal adequately with the subject. On the contrary, it was the view of the commission that it was without power to adopt rules and regulations dealing fully with that problem. If the commission had said that its present rules and regulations are as specific and go as far as it is practicable to go, either from a scientific or a practical standpoint, for the purpose of preventing or minimizing inductive interference, a different situation would be here presented. That, however, is not the commission's position. Its interpretation of the statute is that it is without power to adopt rules and regulations which fully meet the situation. In upholding the opinion of the trial court that the commission has not correctly interpreted its power under the statute, we are neither expressing nor implying what sort of regulations should be adopted with reference to the subject, or otherwise assuming to determine its administrative action.

The judgment is affirmed.

WEDELL, J., concurs in the result.

HARVEY, J. (concurring specially): I concur in the order affirming the judgment of the trial court, but I think the proceedings before

the corporation commission are inaccurately summarized early in the opinion; also, that it is inaccurate to say that the trial court remanded the case to the commission with directions to promulgate reasonable rules, etc. Examining the record, it seems clear to me that no such directions were embodied in the judgment of the court. I am of the opinion also that the excerpt quoted from the opinion of the trial court embodied in a letter written to the attorneys, which in fact was no part of the record, and from the order of the corporation commission, and from the judgment of the trial court, are not well selected nor well arranged to disclose clearly and fully what was done in this case.

I agree with the construction given in the opinion to our statute (G. S. 1935, 66-183). The prudence of the provisions of this statute was for the legislature to determine, not for this court. The questions presented in this case were not before the court in *State, ex rel., v. Weber,* 88 Kan. 175, 127 Pac. 536.

Mr. Justice THIELE joins in this specially concurring opinion.

ALLEN, J. (dissenting): 1. In *State, ex rel., v. Weber,* 88 Kan. 175. 127 Pac. 536, this court held, as stated in the syllabus:

"The transmission of an electric current by wire on a highway in order to furnish light, heat and power to the inhabitants residing along such electric line is a legal and proper use of a highway.

"A person may build and maintain such a line on a rural highway without having obtained a franchise or special license from any officer, providing it is done in a way that will not seriously impede or endanger public travel or unnecessarily interfere with the reasonable use of the highway by other members of the public and there is no invasion of the rights of the owners of abutting lands.

"If such a line should be so built and maintained as to substantially interfere with the legal and proper use of the highway by others of the public, or if the appliances set up and used in the highway constituted a nuisance, the state, at the instance of the attorney-general or county attorney, might maintain an action to enjoin the continuance of the nuisance or the further illegal use of the highway."

In the opinion it was stated: "The highway belongs to the public and all of the public is entitled to the use of it. However, everyone must use it in a reasonable manner so as not to impede travel, transportation or communication, or interfere with its reasonable use by other citizens." (p. 181.)

In the opinion it was further stated:

"What is an unreasonable use of the highway and whether the means and appliances employed by those using it constitute an obstruction or nuisance is ordinarily a question of fact. All who use it must respect the rights of the public. The right of the public to the use of it is subject to reasonable and necessary limitations. Every use may affect others to some extent, but not every use which may cause some inconvenience to others can be regarded as a nuisance or an unreasonable use which would justify an action by the state to enjoin the use. Unless there is something more than a technical obstruction, something which amounts to a substantial interference with the rights of others, there is no ground for an injunction.

"According to the record presented here there is no unreasonable interference with the rights of any one on the highway in question. It appears that the line is being erected with the best of materials, in the safest and most approved manner, and is being constructed so that it will not interfere with travel, transportation or any other legitimate use of the highway. It may be that it would be the better policy for the legislature to regulate the building of such lines on rural highways and place the control of them in some public officer who would fix the conditions on which the line should be constructed and maintained, but until such provision is made any person may, without special permission, make a reasonable use of the highway to transmit electric currents upon wires for the purpose of furnishing to consumers light, heat or power, providing it is done so as not to constitute a nuisance or interfere with the rights of other members of the public." (p. 182.)

The Weber case was decided in 1912. Sections 66-183 and 66-184 were enacted in 1917, and incorporated in the revision of the statutes in 1923. Following the suggestions in the Weber case, the statute gave the commission power to formulate rules to fix the conditions upon which lines should be constructed and maintained.

But where in the statute is there a provision which gives the first utility that strings its wires on the highway a vested right in the earth beneath or in the circumambient air above? Where in the statute is there an intimation that the senior licensee by its prior occupancy is entitled to a monopoly? Where in the statute do we find a declaration that among competing utilities, priority in time gives priority in right?

Suppose the applications of the telephone company and the rural electric were filed on the same day. Suppose further, the plans and specifications of the telephone company called for a grounded system, and the plans and specifications of the rural electric called for equipment modern in all respects — could the telephone company urge that the rural electric should either pay the amount necessary

to modernize the equipment of the telephone company, or failing to do so that it would be barred from the use of the highway? Few would so contend, but in the final analysis that is the position of the telephone company. If prior occupancy gives the telephone company a vested right in the earth and air, or a monopoly to use the highway, their contention must be sustained.

In effect, the telephone company is asking the commission to award it damages in the sum of seven thousand dollars. This contention is made although the commission is without jurisdiction to award damages, and neither a negligent nor willful invasion of its rights is either alleged or proved. As I read the record, the order of the commission was neither unreasonable nor unlawful, and should be sustained.

2. The wire-stringing rules of the commission, relating to the construction and maintenance of wire lines upon, along or across the public highways of the state, promulgated and known as docket No. 1944, appear to cover the subject of inductive interference.

Rule 105 therein defines "electrical supply lines," "communication lines," "voltage," "circuit," "grounded," "insulated," "conductor," and other terms, including the following:

"S. *Inductive exposure* means a situation of proximity between supply and communication circuits under such conditions that inductive interference must be considered.

"T. *Inductive interference* means an effect arising from the characteristics and inductive relations of supply and communication systems of such character and magnitude as would prevent the communication circuits from rendering service satisfactorily and economically if methods of inductive coördination were not applied.

"U. *Inductive coördination* means the location, design, construction, operation and maintenance of supply and communication systems in conformity with harmoniously adjusted methods which will prevent inductive interference."

Rule 201 provides:

"Each utility operating a system of overhead communication or supply lines shall construct and maintain its system of lines in a reasonably safe condition. Such systems and all appurtenances thereof shall be constructed in conformity with good modern practice."

Rule 204 provides:

"A. Utilization of the highways is essential to the economical and efficient extension, operation and maintenance of supply and communication services. To avoid unduly increasing the number or difficulty of situations of proximity incident to the use of the same highway by two or more different kinds of facilities, all lines should, in general, be located as follows:

"3. *All supply and communication lines and other facilities covered by these rules shall be so located, constructed and operated as not to contribute, now or later, to increasing the number or difficulty of crossings, conflicts, or inductive exposures beyond those necessary for the rendering of the respective services.*" (Italics inserted.)

In the findings of the court appears the following:

"Upon oral argument before the court, counsel for all parties interested in this appeal stated that the wire stringing rules promulgated by the State Corporation Commission, pursuant to the statute, and as disclosed by docket 1944 of the commission, which the court has examined, did not cover, and do not now cover 'inductive interference' but merely physical interference."

The following passage also appears in the findings of the court:

"If the parties to this appeal feel and contend that the wire stringing rules promulgated by the commission, docket 1944, do cover 'inductive interference' and that the commission considered they had the right to and did prescribe rules and regulations concerning 'inductive interference,' and that they considered and exercised such rights in this case, then the court's conclusion that the order of the commission was unlawful will not be effective and the court rules that the order of the commission is not unlawful if their rules and regulations cover 'inductive interference.' "

It is clear, therefore, the rules set forth in docket No. 1944 were considered by the district court as well as by the commission.

What disposition should be made of the appeal? Under our statute G. S. 1935, 60-3317, this court is directed to render such final judgment as it deems justice requires.

The rules adopted by the commission as required by our statute G. S. 1935, 66-183, pertain not only to physical construction but to inductive coördination. While these rules establish only general principles for the prevention and solution of inductive interference problems, is this court in a position to say the rules so promulgated are inadequate? From the testimony in the record it is clear that inductive interference depends upon so many factors that an attempt to formulate in detail a set of inflexible rules would appear to be impracticable.

It seems strange that we should hold the order of the commission unlawful because the commission failed to formulate rules as to inductive interference, when the rules above quoted adequately cover that question.