No. 39,572

ORVILLE SCOTT SMITH, *Appellant,* v. THE GARDEN CITY IRRIGATION
POWER COMPANY, a corporation, *Appellee.*

(279 P. 2d 312)

Opinion
filed January 22, 1955.

*Max Wyman,* of Hutchinson, argued the cause, and *Don Wyman,* of Hutchinson, *C. E. Vance, A. M. Fleming, Charles H. Fleming,* and *Bertram J. Vance,* all of Garden City, were with him on the briefs for the appellant.

*William Tinker* and *Hugh P. Quinn,* both of Wichita, argued the cause, and *Ray H. Calihan, Logan N. Green, Daniel R. Hopkins, Ray H. Calihan, Jr., Harrison Smith,* all of Garden City, *Getto McDonald, Arthur W. Skaer* and *William Porter,* all of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries sustained by plaintiff when the rig with which he was working came in contact with a wire maintained by defendant which carried a high voltage of electricity. This was alleged to have been caused by the negligence of defendant. The trial court sustained a demurrer to plaintiff's evidence and he has appealed.

The pertinent facts as to how the injuries occurred are not seriously controverted, and may be stated as follows:

At the time of plaintiff's personal injuries the defendant was furnishing electric current in the cities of Garden City and Holcomb, Kansas, and to various customers in Finney County, for lighting and all other purposes for which electric current is used. Several years prior to the date of plaintiff's injuries, which was June 15, 1951, defendant had constructed its poles and wires on the west side of a country road past a place designated, which was a few miles north and east of Holcomb. This was an ordinary country road which at some time had had some gravel on it, but otherwise apparently was unimproved. At a designated point along this wire defendant had extended a line across the highway to the east for the purpose of serving property owners on the east side of the

highway, which electric line or wire was approximately 25 feet above the highway. This wire was bare and uninsulated, and on the date of the accident was carrying a heavy current of electricity, to-wit: 4160 volts. In the petition it was alleged that it was the duty of defendant to insulate said wire or to take other precautions necessary to protect any person who might come near or be in contact with it while using the highway.

Plaintiff lived at Chase, Kansas, and was in the employ of the C & O Trucking Company of Chase as a truck mechanic and laborer. On the date of the accident he was helping load old 4-inch gas pipe, which had been taken up and cut in lengths which could be loaded on a truck and which had been strung out along the east side of the highway in question. The method used by the trucking company to load the pipe may be described as follows:

Two trucks were used, one was a Mack 3-ton truck on one side of which a boom or gin poles had been attached which could be automatically raised to a height of about 26 feet or lowered to about 12 feet above the roadbed of the highway, one near the front of the truck and the other near the rear. At the end of each was a cable down to a hook. This truck traveled along near the west side of the highway, the truck on which the pipe was to be loaded was between the Mack truck and the pipe to be picked up. It was plaintiff's duty on that date to put one of the hooks in the end of the pipe to be raised and another man was to put the hook in the other end, and the gin poles could be raised so as to carry the pipe over and let it down on the truck to be loaded. There had been rain in the vicinity; the roads were muddy, and the air moist. They had just loaded a piece of pipe and the Mack truck moved forward. Plaintiff had picked up his hook to be carried forward to put in the next piece of pipe when apparently the gin pole came in contact with defendant's uninsulated wire across the road and the electricity passed down the gin pole and cable and into plaintiff's body, causing him serious injuries which were described. Plaintiff alleged:

". . . that all of his injuries aforesaid were the direct and proximate result of the carelessness and negligence of said defendant corporation in maintaining said uninsulated wire charged with a powerful and dangerous current of electricity across said public highway, . . ."

The trucking company was operating under the Workmen's Compensation Act and its insurance carrier was the Tri-State

Insurance Company. It was alleged that the plaintiff Smith, the trucking company, and the insurance company orally agreed to bring the suit in the name of the plaintiff and divide the proceeds of it among them as their interests might appear. The suit was financed by the insurance company.

Defendant's answer denied liability; conceded the line was at a height of approximately 25 feet above the road, and alleged that the striking of its line, and the passage of the electricity therefrom, was caused by the acts of the operator of the Mack truck, naming him, who drove the truck into and against the electric line, and not by any act on the part of defendant. Defendant further alleged that the moving of the truck with its boom or gin poles referred to in plantiff's petition was done without observance of our statute, G. S. 1949, 17-1914 to 1920; that in the absence of compliance therewith, the plaintiff was engaged in unlawful conduct at the time and place of the accident and assumed the risk of consequential bodily injury and cannot recover from defendant.

Upon the trial no evidence was introduced by plaintiff concerning the necessity or reasonableness of insulating the wire across the road. The evidence simply showed injuries to the plaintiff because of other facts hereinbefore stated. The trial court sustained a demurrer to plaintiff's evidence upon the ground that it showed no negligence of defendant. Plaintiff filed a motion for a new trial and upon the hearing of that motion introduced the affidavit of Henry E. Nave who was also an employee of the trucking company and was working with plaintiff on the day of plaintiff's injury. He (Henry Nave) was handling the hook and cable on the other gin pole of the truck. In his affidavit he stated that he had ahold of the cable when the gin pole struck the electric wire and he felt a shock of electricity when the plaintiff, who had ahold of the other hook, got a much more severe shock. He further stated in the affidavit that the wire across the road which was struck by the gin pole was, in his opinion, about 16 feet high. He had been subpoenaed by the defense as a witness and was in his room in a motel, ready to be called any time. Plaintiff's attorney knew he was there and tried to talk with him, in fact they had had him up to the office of one of the attorneys who talked to him. He said he would talk from the witness stand; that some representative for the defendant had told him that he might save

himself embarrassment by not talking to plaintiff or his counsel. The court declined to grant a new trial, in the first place, because the height of the wire across the road was not a fact in issue; and plaintiff knew he had been subpoenaed and could have called him if he wanted to do so. The court thought there was nothing in the affidavit to warrant a new trial. The court still held the view that no evidence against defendant had been shown that would justify recovery by plaintiff.

Counsel for appellee call our attention to the fact that the State Corporation Commission, pursuant to authority vested in it by statute, G. S. 1949, 66-183, has issued its Wire-Stringing Rules. The revised rules of January 1, 1932, were in effect at the time of this accident and rule 212 thereof, which covers the minimum vertical clearance of wires above the ground, provides for a minimum clearance of 18 feet for this type of case. These rules were filed with the revisor of statutes; are not shown to have been disapproved by the legislature, and have become the law of the state, G. S. 1949, 77-410. This Wire-Stringing Rule makes no requirement for the insulation of wires strung across a highway at a height authorized by the rule.

Our statute, G. S. 1949, 17-1914, reads:

"No person, firm or corporation shall move, haul, or transport, any house, building, derrick, or other structure of the height of sixteen feet or over, after having been placed in final position for moving, upon, across, or over, any public highway in the state of Kansas, outside the limits of any incorporated city upon which highway any telephone, telegraph, electric light, or electric power wires are strung, without first obtaining permit therefor as hereinafter provided."

Subsequent sections of the statute provide that to transfer any houses, building, derricks, or other structures, an application for a permit shall be made to the county clerk of the county in which the property is situated, who shall give notice to the person or corporation owning the wires who, upon receipt of such notice, will furnish competent help to raise or remove the wires to permit the structure to be moved.

In sustaining the demurrer to plaintiff's evidence, and in overruling his motion for a new trial, the court referred to this statute and called attention to the fact that the evidence did not disclose compliance with it, and held it applicable to the structure the trucking company was using since the gin poles could be raised to a height of 26 feet, and held that not complying with it barred

plaintiff's recovery. This holding is in harmony with our previous decisions. See, *Hawn v. Kansas Gas & Electric Co.,* 122 Kan. 395, 252 Pac. 245; *Cracraft v. Kansas Power & Light Co.,* 163 Kan. 285, 181 P. 2d 318; and, *Sipult v. City of Pratt,* 168 Kan. 294, 212 P. 2d 221. We approve that holding of the trial court.

The result is that the court did not err in sustaining defendant's demurrer to plaintiff's evidence nor did it err in overruling plaintiff's motion for a new trial.

The judgment of the trial court is affirmed.

ROBB, J., not participating.