No. 27,041.

JOE HAWN, *Appellee,* v. THE KANSAS GAS AND ELECTRIC COMPANY,
*Appellant.*

SYLLABUS BY THE COURT.

1. HIGHWAYS — *Regulation of Structure Moving — Statute Considered.* The
statute regulating the moving of houses, buildings, derricks, and other struc-
tures, upon or across public highways over which telegraph, telephone, elec-
tric light or electric power wires are suspended, was enacted in the interest
of the public welfare generally, and was designed in part to prevent loss
of life and bodily injury in the adjustment of wires to permit moving struc-
tures to pass.

2. ELECTRICITY—*Injury to House Mover on Highway—Failure to Comply with
Statute—Liability.* A house mover, whether employer or employee, who,
without observance of the regulations, undertakes to lift a wire suspended
over a highway intersection, to permit a moving building of statutory height
to pass, engages in unlawful conduct, and takes the risk of consequential
bodily injury.

Appeal from Crawford district court, division No. 2; GEORGE F. BEEZLEY,
judge. Opinion filed January 8, 1927. Reversed.

*E. H. Henning* and *A. M. Etchen,* both of Kansas City, for the appellant.

*T. J. Karr, Emma M. Karr,* both of Girard, and *A. J. Curran,* of Pittsburg,
for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injury
to a house mover who came in contact with an electric wire which
was suspended above the highway on which he was moving a house.
The answer pleaded noncompliance with the statute regulating the
moving of houses upon highways over which electric power wires
are strung. A demurrer to the answer was sustained, and defendant
appeals.

The accident occurred at the intersection of two highways, one
extending north and south and the other extending east and west
from the intersection. On the east side of the north-and-south
highway were poles supporting three high-voltage wires, which the
petition alleged were twenty-two feet from the surface of the high-
way, and were uninsulated. At the south side of the east-and-west
highway were poles supporting insulated wires suspended some dis-

Highways, 29 C. J. p. 648 n. 62.

tance beneath the high-tension wires. From a pole at the southeast corner of the highway intersection, two insulated service wires extended in a northwesterly direction across the intersection. The petition alleged these wires were only fifteen feet above the surface of the highway. Plaintiff was assisting Joe Reddick in moving the house. The house was mounted on trucks drawn by an engine, which came from the south, and which turned east on the highway intersection. Plaintiff was on top of the house, and while attempting to lift the two insulated service wires, he came in contact with or near to the upper high-voltage wires, and was injured.

The wires belonged to defendant. The answer denied that the service wires were only fifteen feet from the surface of the highway, alleged that the high-voltage wires were twenty-five feet from the ground, and alleged that the house extended to a height of sixteen feet or more after it was placed in final position for moving on the highway. The statute provides that no one shall move any house, building, or derrick of that height, upon or across any rural highway on which telephone, telegraph, electric light, or electric power wires are strung, without first obtaining a permit to do so. (R. S. 17-1914.) Permits are issued by the county clerk, on application and payment of a fee. If it will be necessary to cut, move, raise, or in any way interfere with the wires, the applicant must state the name of the owner of the wires and the time and place of the necessary interference. (R. S. 17-1915.) The county clerk shall then give twenty-four hours' notice to the owner, and after service of notice it becomes the duty of the owner to furnish competent workmen or linemen to do whatever is necessary to facilitate moving of the house. Persons engaged in moving houses are forbidden to interfere with wires unless the owner, after notice, refuses to raise or cut them, and in that event, the house mover shall employ none but competent and experienced workmen or linemen to do the work. (R. S. 17-1917.) Provision is made for paying the expense of moving poles and raising and cutting wires to allow structures to pass, and two sections of the statute read as follows:

"It shall be unlawful for any person, firm, or corporation engaged as principal or employee in moving any house, building, derrick or other structure, as provided in the above sections, upon, across, or over, any public highway outside of the limits of any incorporated city, to move, touch, cut, molest, or in any way interfere with any telephone, telegraph, electric light or electric power wires or any poles bearing any such wires, except under and in compliance with the provisions of this act.

Hawn v. Kansas Gas & Electric Co.

"Any person violating the provisions of this act shall be deemed guilty of a misdemeanor, and shall upon conviction thereof, be punished by a fine of not more than $100, or by imprisonment in the county jail for not more than sixty days, or by both such fine and imprisonment." (R. S. 17-1918 and 17-1920.)

Plaintiff contends this statute was enacted for the single purpose of protecting the property of telephone, telegraph, electric light and electric power companies from damage by building and derrick movers, and had no public aspect beyond suppression of this species of interference with private property. The case of *La Dow v. Oklahoma Gas and Electric Co.*, 28 Okla. 15, is cited in support of the contention. That case involved a city ordinance which forbade, under penalty, interference with electric wires without a permit from the owner of the wires, and the court held the ordinance was one to protect property from mischievous molestation.

As the result of needs arising in the economic development of the state, buildings were frequently moved from site to site, in both city and country. Occasionally, as the result of construction of a railroad, or location of a county seat, all the buildings of a town would migrate. After a mine in a particular locality was worked out, the mining community would move, taking their buildings with them; and in the mineral district it became a common practice to move houses, derricks, and other tall structures from place to place over the country roads. When this court was called on to define the nature of this use of roads and streets, the prevailing legal theory was that the use was extraordinary, and was discordant with normal primary highway uses. The fact was, the use had become ordinary, in the sense of common and customary. The court gave due recognition to the fact, and declared the use to be lawful. Use of streets and highways for telegraph and telephone communication and for transmission of electric energy had become common. That use was also lawful (*State, ex rel., v. Weber*, 88 Kan. 175, 127 Pac. 536), and it was inevitable that the house and derrick mover and the public service corporation should clash. Several interests were involved. Maintenance of efficient service to the public was jeopardized by haphazard and inexpert wire cutting and wire raising. Such operations left in their train crippled men and widows and orphans. The property of public service companies was damaged and their expenses were increased, and permissible use of highways by house movers was delayed and obstructed. It so happened the contest was waged chiefly in personal-injury cases. (*Winegarner v. Edison*,

83 Kan. 67, 109 Pac. 778 [1910]; *Wade v. Electric Co.*, 94 Kan. 462, 147 Pac. 63 [1915]; *Wade v. Electric Co.*, 98 Kan. 366, 158 Pac. 28 [June, 1916]).

In the Wade case, a house and derrick mover, without electrical training or experience, was killed while lifting a wire stretched across a highway, to permit the derrick he was moving to pass. The action was commenced by his widow. At the first trial a demurrer was sustained to plaintiff's evidence. On appeal to this court the judgment was reversed. At the second trial the widow recovered a judgment of $8,000, and the electric company appealed. The case aroused unusual public interest, and briefs were filed on behalf of municipalities and public service companies not parties to the action. Besides that, the Kansas State Federation of Labor obtained permission to file a brief prepared by its attorney, J. I. Shepard. In that brief, the veteran workingman's advocate made a characteristic appeal for conservation of human life and limb as a subject of vastly more importance to society than the accumulation of wealth. The judgment was affirmed on June 10, 1916. The legislature met on January 9, 1917, and on January 17 Senator Wark introduced senate bill No. 169, entitled "An act regulating the moving of houses, buildings, derricks, and other structures, upon, across, or over certain public highways." The bill passed with but slight amendment, and became a law on March 7, 1917. (Laws 1917, ch. 251; R. S. 17-1914 to 17-1920.) It is manifestly a statute enacted in the interest of the public welfare generally, and so far from being a petty, malicious-mischief act, it touches all the important interests suggested above which had been brought sharply to legislative attention by lamentable consequences of the conflict between the two kinds of exceptional highway use.

In this instance, the statute required Joe Reddick, assuming him to have been plaintiff's employer, to apply for and procure a license to move the house upon the highway intersection over which defendant's wires were strung. He was further required to furnish the necessary information to the county clerk to enable that officer to notify defendant of time when and place where these wires would be interfered with. The purpose was that defendant might furnish workmen to lift or cut the wires, and do whatever was necessary to allow the house to pass. To that end, defendant was required to furnish "competent workmen or linemen," and competency includes not only ability to do the work in proper manner, but ability to

appreciate all the dangers of doing the work at the particular time and place, and to accomplish the desired result with safety to themselves and to those concerned in moving the house.

It is not to be presumed or inferred that if defendant had been notified it would have refused to do what the law required. Assume for the moment it had refused. It then devolved on Reddick to employ "only competent and experienced workmen or linemen to do the work," and he became subject to fine or imprisonment or both should he touch or molest defendant's wires except through the agency of qualified workmen. Plaintiff does not venture to plead that he had any qualification whatever to do what he attempted to do, and even if defendant had been delinquent, plaintiff as the employee of a house mover was expressly forbidden to touch defendant's wires, under the same penalty as his employer.

The petition had much to say about danger attending maintenance of a system for transmission of electric energy of high voltage, and duty of defendant to take measures commensurate with the danger, for protection of persons lawfully using the highway; and it was alleged the high-tension wires should have been insulated for the benefit of plaintiff who, as he worked on top of the moving house, was obliged to come in contact with or in close proximity to them. The difficulty is, plaintiff misconstrued the statute. Having misconstrued it, he ignored it, and pleaded common-law negligence, in a case peculiarly within purview of the statute. Plaintiff was not lawfully using the highway, and insulation or noninsulation of wires at this highway intersection was a subject of no concern to him, because he was forbidden by law to be in the vicinity of the wire which injured him. The testimony in the Wade case disclosed it was not the practice to insulate high-tension wires between supports, and there was expert testimony that such insulation is not feasible. In any event, noninsulated high-tension wires were maintained along and across the highways of the state when the legislature acted. It did not provide that such wires should be insulated for the benefit of house and derrick movers. It provided that house and derrick movers should not use the highway beneath such wires in the prosecution of their business, without license to do so, and should not go among the wires at all. The statute is not a one-wire statute. The legislature was not ignorant of the fact that, in order to lift or remove a wire to permit a building to pass, a lineman may be obliged to work in the midst of or in proximity to a network of wires.

Because of the great danger necessarily attending such work, it was made unlawful for any one except a qualified workman to engage in it for the benefit of a house or derrick mover.

The result of the foregoing is, it was wholly immaterial to plaintiff how defendant maintained its wires at the time and place of the accident, and plaintiff was injured, not because defendant was guilty of breach of duty toward him, but because of his own unlawful conduct in placing himself in the dangerous situation which he occupied when he was injured.

It was admitted at the oral argument that if the statute were held to apply, no license to move the house had been procured, and no notice had been given to defendant to enable it safely to lift its own wires. Under these circumstances, the demurrer to the answer should be carried back to the petition, and will be so treated.

The judgment of the district court is reversed, and the cause is remanded, with direction to sustain the general demurrer to the petition.