No. 37,705

FREDA SIPULT and FREDA SIPULT as the next friend of Terry Sipult, an infant, *Appellants*, v. THE CITY OF PRATT, KANSAS, a municipal corporation, *Appellee*.

(212 P. 2d 221)

Opinion filed December 10, 1949.

*Fred Hinkle,* of Wichita, argued the cause, and was on the briefs for the appellants.

*M. C. Bucklin,* of Pratt, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for death by wrongful act. The defendant's demurrer to plaintiffs' second amended petition was sustained, and they have perfected an appeal to this court.

The allegations of the second amended petition are extended and show plaintiffs' capacity and right to maintain the action. In our summary of the remaining allegations we shall direct attention only to those necessary for consideration of the contentions presented. Earl Lynn Sipult was an employee of James Lear who was a house mover and engaged in moving a house from the army air base north of Pratt, south to the city of Medicine Lodge, and preliminary to performance of that undertaking had procured the necessary permit from the county clerk as provided by G. S. 1935, 17-1914, *et seq.*, and other necessary permits which need not be detailed. The defendant city owned and maintained a high voltage electric line along an east and west highway about three miles south of the city of Pratt and at a point where the incident later mentioned occurred had an uninsulated line across the highway to serve a farm patron. On the morning of October 7, 1947, Lear notified the city that he would move the house through the city of Pratt and along the highway above mentioned and the city sent three employees skilled in the work to be done to assist Lear and Sipult in moving the house by lifting all electric wires with which it came in contact. The house being moved was on rollers and the top thereof was over nineteen feet above the ground. On the ridgepole of the house were one or more cupolas, which the city's agents knew would come in contact with the electric wire across the highway and in dangerous proximity to Sipult who was assigned the task of riding on the roof as a lookout; that Lear and Sipult had no tools or equipment to hoist dangerous wires and Sipult "was then and there ignorant and unlearned in the handling of electric wires, and of the danger attending the handling and coming in contact with the same." The agents of the city knew of the danger to Sipult but notwithstanding, they negligently failed to proceed with the moving house until it had passed beyond the point where the uninsulated wire crossed the highway; that they had helped Sipult move the house through the corporate territorial limits of the city of Pratt and then negligently failed to continue on with him in moving the house and, "That the deceased, (Sipult) after the defendant had carelessly and negligently failed and neglected to continue with him and assist him in moving the said house in the manner aforesaid, continued to move the said house himself and moved the same under the uninsulated wire of the defendant at the point aforesaid." As the house moved forward, Sipult was on the roof and as the house moved under the wire, the

body of Sipult came in contact with the wire and a high voltage of electricity passed through his body instantly killing him. The plaintiffs alleged that they did not know whether the wire cleared the cupola and roof, or caught on the edge and became unfastened and struck Sipult, or whether he fell into the wire as the structure moved, but that he did not with his hands or feet or other portion of his body attempt to lift the wire to clear the roof of the house or to disengage the wire if it caught on the house, and that he was first observed by his fellow workmen lying dead on the roof some distance below the wire, having been killed by an electric charge from the wire. Other allegations setting forth specific charges of negligence on the part of the defendant, as well as plaintiffs' damages, need not be mentioned.

As has been stated the trial court sustained the defendant's demurrer to the petition. In the journal entry filed there is included the statement of the court in ruling on the demurrer that it was of the opinion that the decision in *Hawn v. Kansas Gas & Electric Co.*, 122 Kan. 395, 252 Pac. 245, was directly in point and decisive of all of the issues tendered by the plaintiffs' second amended petition, and that the Kansas statutes, as interpreted in that case, clearly prevented plaintiffs' recovery.

In the Hawn case, *supra*, this court had before it for consideration the force and effect of Laws 1917, ch. 251, which now appears as G. S. 1935, 17-1914, *et seq.* In a summary way it may be said the statute provides that no person shall move any house of the height of sixteen or more feet when in position for moving, upon any highway outside the limits of any incorporated city, upon which electric power wires are strung, without first obtaining a permit therefor from the county clerk, and if it shall be necessary to cut, move, raise or interfere with any such wires, the application for the permit shall state the name of the owner of the wires and the time and place when and where the cutting, raising or otherwise interfering with the wires will be necessary; that the county clerk shall give twenty-four hours' notice to the owner of the wires and it shall be the owner's duty to furnish competent workmen to cut and raise such wire as will be necessary to facilitate removing of the house, provision for payment of expense being made in the statute. The statute then provides:

"No person engaged in moving any house . . . shall raise, cut, or in any way interfere with any such . . . wires unless the persons . . . owning . . . the same shall refuse so to do after having been notified

. . .; then, only competent and experienced workmen or linemen shall be employed in such work . . ."

The statute further makes it an offense for any person engaged in moving a house along the highways outside the limits of an incorporated city "to move, touch, cut, molest or in any way interfere" with any electric power wires except under and in compliance with the provisions of the act, and provides penalties.

In the Hawn case, *supra*, the action was by a workman engaged in moving a house down the highway and who was injured by coming in contact with or near to high voltage electric lines alleged to have been negligently maintained, and the appeal arose from a ruling sustaining a demurrer to an answer where it was alleged that the house being moved was within the purview of the above statute, and that no permit had been procured. It is unnecessary that we here review the analysis made of the above statute, the purposes of its enactment and results following failure to observe its requirements, reference to that opinion being made therefor. All is reflected in the syllabus of the opinion, which states:

"The statute regulating the moving of houses, buildings, derricks, and other structures, upon or across public highways over which telegraph, telephone, electric light or electric power wires are suspended, was enacted in the interest of the public welfare generally, and was designed in part to prevent loss of life and bodily injury in the adjustment of wires to permit moving structures to pass.

"A house mover, whether employer, or employee, who, without observance of the regulations, undertakes to lift a wire suspended over a highway intersection, to permit a moving building of statutory height to pass, engages in unlawful conduct, and takes the risk of consequential bodily injury." (Syl. ¶¶ 1, 2.)

Appellants seek to distinguish the Hawn case, *supra*, from the case at bar and direct attention to the fact that no permit was procured in the Hawn case, but that one was in this case, and that in the Hawn case the plaintiff attempted to lift the wire while in this case the allegation was that the deceased did not attempt to lift the wire. In our opinion the differences noted do not make the reasoning of the Hawn case inapplicable. While it is true Lear, the employer of Sipult, had procured a permit and in accordance with the statute the city had furnished competent workmen, it is equally true from the allegations of the petition that at the time of the injury to Sipult, the city's workmen were not present. If it be assumed from their absence that the city refused to furnish competent workmen, then the duty of Sipult allegedly "ignorant and unlearned

in the handling of electric wires" was to procure competent and experienced workmen as provided by the above statute. Notwithstanding, Sipult "continued to move the said house himself and moved the same under the uninsulated wire," a thing the statute prohibits. Neither can a distinction be made because of the allegation that Sipult did not attempt to raise the wire. The statute states that no person "shall raise, cut, or in any way interfere" with any such wire. Under the Hawn case, Sipult's conduct was the same whether he was hurt either by raising the wire or by proceeding to move the house under it in such manner that it interfered with the wire.

Appellants direct our attention to language in *Cracraft v. Kansas Power & Light Co.*, 163 Kan. 285, 181 P. 2d 318, where the issue was the authority of the owner of the wire to demand a cash deposit before the work was done and arose under the same statute now under consideration. In answering a contention that under the statute, no duty was imposed upon the owner to move its wires, this court said that:

"Indeed, prior to the enactment of the statute the authorities indicate defendant would have had such a duty upon proper notice. (*Winegarner v. Edison*, 83 Kan. 67, 109 Pac. 778; *Logan v. Electric Co.*, 99 Kan. 381, 161 Pac. 659.)" (l. c. 287.)

Appellants interpret this to mean that regardless of the notice required, the city had a duty to him, and that the statute was "nothing more than cumulative of the law which already existed," and our attention is directed to decisions in cases decided prior to the enactment of the statute under consideration. We shall not review those decisions for we are of opinion that, as was held in the Hawn case, the statute was enacted in the interest of the public welfare generally and was designed in part to prevent loss of life, and by its express terms not only provided a means whereby the person moving a house down a public highway was relieved from undertaking the risk of cutting, moving or raising an electric power wire, but was specifically prohibited from doing so except as provided in the statute. Appellants' interpretation of the decision in the Hawn case cannot be sustained. In our opinion, the statute did not create another cause of action, additional to what may here be called actions for common law negligence, but regulated all activities coming within the field of its operation. The allegations of the second amended petition disclose Sipult, contrary to the statute, moved the

house along the highway and into the wire which the appellants say was negligently maintained. Under that statute, as it was construed in the Hawn case, and as we again construe it, Sipult took the risk of consequential bodily injury. Had he survived he could not have maintained a cause of action against the city, and having died, his widow and child may not.

The judgment of the trial court is affirmed.