Johnnie Marvin SMITH, Plaintiff in Error,

v.

SOUTHWESTERN BELL TELEPHONE CO., Sam Sterkel & William O. Sprague, Defendants in Error.

No. 37553.

Supreme Court of Oklahoma.

Feb. 9, 1960.

Claud Briggs, Oklahoma City, and Frank Seay, Seminole, for plaintiff in error.

John H. Cantrell, Oklahoma City, and Hicks Epton, Wewoka, and Kenneth L. Hodge, Charles V. Wheeler, Oklahoma City, for defendants in error.

JACKSON, Judge.

This is an appeal by Johnnie Marvin Smith, herein referred to as plaintiff, from an order and judgment sustaining a demurrer to plaintiff's evidence and dismissing his case by the Superior Court of

Seminole County. The plaintiff had sued Southwestern Bell Telephone Company, a corporation, Sam Sterkel and William O. Sprague, for personal injuries alleged to have been received by him from electric current as he undertook to raise a telephone wire so that a barn, being moved by his employer along a highway east of Oklahoma City, would pass under the wire. Plaintiff alleged that defendants Sterkel and Sprague were employees of the telephone company and that their negligence in directing plaintiff to raise the telephone wire resulted in severe shock and burns on his body. We shall refer to defendants by name or as defendants.

Plaintiff's evidence tends to show that Frank Pace was the owner of the barn and employed George M. Gardner to move the barn from its location near Reno Avenue, east of Oklahoma City, to a point near Meeker, Oklahoma.

Before attempting to move the barn onto the highway Pace obtained a permit from the Department of Public Safety of the State of Oklahoma under the provisions of 47 O.S.1951 § 116.4, infra, which permit by its terms purportedly authorized Pace to move the barn along the county highway involved herein. Plaintiff's evidence also shows that prior to moving the barn Pace notified the telephone company by phone of the time when he would move the barn. Whether he did so by direction of the Department of Public Safety is not shown. Apparently as a result of the notice given, two or more of telephone company's employees were at the barn when Pace, Gardner, and plaintiff arrived to move the barn.

Plaintiff testified that one of the telephone men, and plaintiff's employer, Gardner, both told plaintiff to get on top of the barn to raise the telephone wires along the route, where necessary, to move the barn. Plaintiff further testified that he had no knowledge of electricity and had had no previous experience with any electrical, telephone or telegraph lines, or anything of that nature. His injuries occurred when he reached down from his position on the barn to lift a telephone wire so that the barn might be moved under the wire. At this point on the road the telephone company and an electric company were using the same poles and the electric line was located some five or six feet above the telephone wire.

The defendant telephone company contends that plaintiff was a trespasser as a matter of law and cannot recover against the telephone company. This contention is based upon 69 O.S.1951 §§ 611, 612, 613, 614, 615 and 617.

Section 611 provides that no person shall move a house or building along a highway without a permit. Section 612 provides that the application for permit shall be made to the county clerk of the county where the building is situated. Section 613 provides that if it appears that it will be necessary to cut, remove, raise or in any way interfere with any telephone, or any electric wires, it will be the duty of the county clerk to give the telephone and electric companies owning the wires at least twenty four hours notice of the time and place. Section 614 provides in material part as follows:

"It shall be the duty of any * * * corporations owning or operating said poles, wires, * * * or trolley wires, * * * after service of notice as required in Section Three (section 613, supra), to furnish competent workmen or linemen to remove such poles, or raise, or cut such wires or cables as will be necessary to facilitate the moving of said house, building or other structure. * * *. No person engaged in moving any house, building or other structure, shall raise, cut or in any way interfere with any such poles, wires or cables unless the persons or authorities owning or having control of the same shall refuse to do so, after having been notified as required by Section (3) (section 613, supra); *then only competent and experienced workmen or linemen shall be employed* in such work, and the same shall be done in a careful and

workmanlike manner, * * *." (Emphasis supplied.)

Section 615 provides in material part as follows:

"It shall be unlawful for any person, firm or corporation engaged as *principal or employee* in moving any house, building or other structure upon, across or over any public highway outside of the limits of any city * * * to touch, move, cut, molest, or in anyway interfere with any telephone or telegraph wires * * *, except under and in compliance with the provisions of this act. (Sections 611–617, supra.)" (Emphasis supplied.)

Section 617 provides penalties up to $100 fine and 60 days' imprisonment in jail for any person convicted for violating the provisions of the act.

Before considering the foregoing statutory provisions we must determine whether, as contended by plaintiff, these provisions of the statutes have been repealed.

69 O.S.1951 §§ 611–617, supra, were enacted as a special act in 1917 to deal specifically with the moving of buildings upon and across the highways of this state. Our attention has not been called to any Legislative enactments which expressly repeal any section or sections of the above mentioned act. Our attention has been invited, however, to House Bill No. 26, Chapter 50, Article 4, S.L.1936–37, 47 O.S.1951 § 351 et seq., which created the Department of Public Safety to prevent violation of the laws relating to size of commercial motor vehicles designed for the protection of the highway pavements and structures on such highways.

In 1939, Chapter 50, Article 7, Section 37, page 304, S.L.1939, the Legislature enacted the Motor Vehicle License & Registration Act. In Section 37 thereof it was provided:

" * * * provided, with due regard for the public safety and the conservation of the public highways, the State Highway Commission, or the Board of County Commissioners of any County of this State, within such County, shall have authority to grant permits for moving of houses or other large objects in excess of the weight or size herein provided, when such houses or objects cannot be reasonably dismantled, or for the operation over any road or highway within this state, * * *."

Section 38 of said Act repealed all laws in conflict with said Act.

Our attention is also invited to House Bill No. 184, Title 47, Chapter 4, page 313, S.L.1947, and the following language:

"Section 1(6) Provided, however, that notwithstanding the provisions of Title 47, Section 22.5, O.S.Supp., 1945, the Department of Public Safety only, acting through its delegated officers or patrolmen, shall have the authority to issue special permits for temporary operation * * * of vehicles or combination of vehicles * * * which, including load, may be greater than weights and dimensions herein specified for single load unit * * *. Such special permits for temporary operation shall be issued only for a single trip * * * and shall designate the highways and bridges which shall be used under the authority of such permit. * * *." 47 O.S.Supp. 1947 § 111(6).

"Section 3. Department of Public Safety. All powers now vested in the State Highway Commission to enforce the provisions of this Act or any law as to the operation of vehicles over the highways of the State of Oklahoma are hereby transferred and vested in the Department of Public Safety." 47 O.S.Supp.1947 § 113.

Section 5 of the Act repealed all other Acts or parts of Acts in conflict therewith.

In 1949 the Legislature enacted House Bill No. 35 (Laws 1949, page 318, § 4), 47 O.S.1951 § 116.4, wherein it is provided in part as follows:

"Section 4. The Commissioner of Public Safety, *only* acting through his

delegated officer, shall have authority to issue * * * permits for temporary operation * * * of oversize vehicles * * *. Such special permits may prescribe the hours of the day when valid, the highways to be used, and such other conditions as the issuing officer may consider proper under the circumstances." (Emphasis supplied.)

From the foregoing it may be inferred that 69 O.S.1951 § 612, has been repealed, insofar as it requires the house mover to apply for and obtain a permit from the county clerk. We do not think it is necessary for us to determine that question in disposing of the issue here. Frank Pace had obtained from the Department of Public Safety a permit to move the barn over the highway and was operating under this permit at the time of the accident and injuries in question. We will assume, without deciding, that it was unnecessary for him to obtain a permit from the county clerk. It does not necessarily follow, however, that the other provisions of 69 O.S.1951 §§ 611–617, supra, have been amended or repealed.

As heretofore shown, 69 O.S.1951 §§ 611–617, was a special Act, enacted to deal with a specific problem; that is, the moving of buildings upon and across the highways of this state, where telephone lines and other lines would be encountered. It was an Act complete within itself.

The important question is whether legislation subsequent to 1917 has repealed the Act (69 O.S.1951 §§ 611–617) in toto.

■ In the third paragraph of the syllabus in State ex rel. King v. White, 170 Okl. 126, 39 P.2d 69, we held:

"Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is to remain in force as an exception to the general."

■ In the body of the opinion in State ex rel. Hamilton v. Taylor, 68 Okl. 38, 171 P. 452, we said that the well-settled rule is that where two acts, or parts of acts, are reasonably susceptible of a construction that will give effect to both and to the words of each, without violence to either, it should be adopted in preference to a construction which leads to the conclusion there is a conflict. In the second paragraph of the syllabus therein we held:

"Since repeals by implication are not favored, statutes must be construed so as to give effect, if possible, to each section, and an earlier statute will not be held to have been repealed by a later one, unless the apparent conflict between the two is irreconcilable."

See also In re Application of State to Issue Bonds to Fund Indebtedness, 33 Okl. 797, 127 P. 1065 and Wagner v. Swan, 162 Okl. 95, 19 P.2d 555.

■ While 69 O.S.1951 §§ 612 and 616, may have been repealed to the extent that it was not necessary for Pace to apply for and receive a permit from the county clerk before moving the building upon the highway, we hold that the other provisions of 69 O.S.1951 §§ 611–617, have not been repealed. In re Application of State to Issue Bonds to Fund Indebtedness, 33 Okl. 797, 127 P. 1065; In re Pitman's Guardianship (Federal Surety Co. v. Dudding), 127 Okl. 210, 260 P. 452; In re Via's Estate, Okl., 295 P.2d 779. The telephone company had sent employees to handle the wires and it is not contended that the conduct of any of the parties would have been different if the notice had been received from the county clerk rather than from Pace.

We come now to defendant's proposition that plaintiff was a trespasser as a matter of law under the provisions of 69 O.S.1951 §§ 611–617, supra. Although this act was adopted in 1917 by our Legislature this court has not heretofore been called upon to construe it.

The Kansas Legislature in 1917 adopted an act identical in nature and almost identical in all of its terms, Laws 1917, c. 251. In construing their statute in 1927, the Kansas court in Hawn v. Kansas Gas & Electric Co., 122 Kan. 395, 252 P. 245, 246,

and after relating its historical background, in the body of the opinion said:

"It is manifestly a statute enacted in the interest of the public welfare generally, and so far from being a petty malicious mischief act, it touches all the important interests suggested above which had been brought sharply to legislative attention by lamentable consequences of the conflict between the two kinds of * * * highway use.

" * * * The purpose was that defendant (electric transmission company) might furnish workmen to lift or cut the wires and do whatever was necessary to allow the house to pass. To that end, defendant was required to furnish 'competent workmen or linemen,' and competency includes not only ability to do the work in the proper manner, but ability to appreciate all the dangers of doing the work at the particular time and place, and to accomplish the desired result with safety to themselves and to those concerned in moving the house.

" * * * Assume for the moment it (electric company) had refused. It then devolved on Reddick (the house mover) to employ 'only competent and experienced workmen or linemen to do the work,' and he became subject to fine or imprisonment or both should he touch or molest defendant's wires except through the agency of qualified workmen. Plaintiff does not venture to plead that he had any qualifications whatever to do what he attempted to do, and, even if defendant had been delinquent, plaintiff, as the employee of a house mover, was expressly forbidden to touch defendant's wires, under the same penalty as his employer.

" * * * Because of the great danger necessarily attending such work, it was made unlawful for any one except a qualified workman to engage in it for the benefit of a house or derrick mover.

" * * * plaintiff was injured, not because defendant was guilty of a breach of duty toward him, but because of his own unlawful conduct in placing himself in the dangerous situation which he occupied when he was injured."

In the Hawn case, supra, the house mover had not obtained a permit from the county clerk as required by the Kansas statute and the defendant electric company had not been requested to furnish competent linemen, and none were there.

In Sipult v. City of Pratt, 1949, 168 Kan. 294, 212 P.2d 221, 224, the house mover had obtained a permit. The City of Pratt (operating its own electric system) had furnished competent linemen to assist with the moving within the city but the workmen were not present when an electric line of the city was encountered outside of the city. The plaintiff, an unskilled employee of the house mover was on top of the house when he came in contact with the electric line of the defendant city. The court followed the Hawn case, supra, and in the body of the opinion said:

"While it is true Lear (the house mover), the employer of Sipult (plaintiff), had procured a permit and in accordance with the statute the city had furnished competent workmen, it is equally true from the allegations of the petition that at the time of the injury to Sipult, the city's workmen were not present. If it be assumed from their absence that the city refused to furnish competent workmen, then the duty of Sipult allegedly 'ignorant and unlearned in the handling of electric wires' was to procure competent and experienced workmen as provided by the above statute. Notwithstanding, Sipult 'continued to move the said house himself and moved the same under the uninsulated wire', a thing that statute prohibits."

In both of the Kansas cases the court held that the plaintiff, having engaged in

unlawful conduct, took the risk of consequential bodily injury.

Plaintiff contends that there is a distinction between the Kansas cases and the instant case.

In the instant case Pace had obtained a permit and the defendant's employees had been sent out to handle the wires. They did not handle the wires but, together with plaintiff's employer, directed the plaintiff to handle the wires. As said in the Kansas cases, when the defendant company failed to provide competent workmen to handle the wires, it was the duty of the house mover to provide competent linemen to handle the wires. That court further held that the statute applied to the employee of the house mover as much as it did to his employer, and plaintiffs were denied relief in each of those cases. We see no legal distinction between this case and Sipult v. City of Pratt, supra.

Plaintiff contends that he was an express invitee of defendant in handling the telephone company's wires to mutually help the defendant in preventing the wires from being damaged by the move. We think this would be a correct conclusion unless such an invitation is contrary to the provisions of the statute.

Section 614 of the act provides that *no person* engaged in moving any building shall raise any wires unless the owner of wires refuses to do so. Where a telephone company refuses to supply any qualified linemen, then the statute (Section 614) specifically provides that those engaged in moving the building may raise the wires, but "only competent and experienced workmen or linemen shall be employed in such work". Section 615 of the act provides that it shall be unlawful for any person engaged as principal or employee in moving any building to touch or move any telephone wires except in compliance with the provisions of the act.

In the case before us the telephone company employees did not handle the wires and in effect refused to do so. Under this situation the plaintiff and his employer were authorized by statute to utilize additional linemen to assist in handling the wires but in doing so the statute provides that they may employ only competent and experienced workmen or linemen. These provisions of the statute are positive in their language and even though plaintiff (being disqualified under the statute) was invited by a telephone company employee to handle the lines the invitation could not be valid where, as here, it is expressly contrary to the intent and purpose of the statute.

In Missouri Fidelity & Casualty Co. v. Scott & Scott, 72 Okl. 59, 178 P. 122, 123, we quoted with approval from Downing. v. Ringer, 7 Mo. 585, as follows:

"Any contract made in consideration of an act forbidden by law is absolutely void, and the illegality of the contract will constitute a good defense at law, as well as in equity."

In 17 C.J.S. Contracts § 201, it is said that generally an agreement in violation of positive legislation is illegal and void.

We conclude that the invitation given by the employee of the telephone company to the plaintiff to handle the wires was contrary to the provisions of the statute and beyond his lawful authority. Having so concluded it is unnecessary for us to determine whether the telephone company linemen were negligent or careless in giving directions and instructions to the plaintiff, for as said in Hawn v. Kansas Gas & Electric Co., supra, the plaintiff was forbidden by law to be in the vicinity of the wire which injured him.

The trial court properly sustained the demurrers to the evidence.

Judgment affirmed.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON and IRWIN, JJ., concur.

WILLIAMS, V. C. J., and BLACKBIRD and BERRY, JJ., dissent.