450 P.2d 203 (1966)
In the Matter of the GUARDIANSHIP OF John D. CAMPBELL, an Incompetent Person.
Earl WATTS, as Guardian of John D. Campbell, an incompetent person, Plaintiff in Error,
v.
J.D. CAMPBELL and Nelle C. Wilson, his next friend, Defendants in Error.
No. 40980.
Supreme Court of Oklahoma.
May 20, 1966.
Horsley, Epton & Culp, Wewoka, for plaintiff in error.
Bishop & Wantland, Seminole, for defendants in error.
*204 PER CURIAM.
This is an appeal of first impression involving the construction of 58 O.S. 1961, § 896, which permits the nomination of a guardian by a person under certain limitations.
The facts presenting the issues are hereafter set out.
*205 On July 30, 1963, applicant, John D. Campbell, was adjudicated incompetent and N.L. Dillow was appointed guardian of his person and estate by the County Court of Oklahoma County.
On October 4, 1963, applicant filed application for restoration, which the County Judge of Oklahoma County treated as an application to transfer the cause to Seminole County. The matter was ordered reset and new notices were issued to reflect that further hearing was for the determination of transfer of the guardianship to another county. On November 14, 1963, and without protest, the County Court transferred the guardianship proceedings to Seminole County.
On November 27, 1963, an application was filed in the County Court of Seminole County asking removal of Dillow as guardian, and in the prayer for relief also asked to be allowed to nominate a guardian of his own choice. To this application the attorneys for Dillow demurred.
After hearing on the applicant's motion, the County Judge on December 19, 1963, sustained Dillow's demurrer on the ground this issue was "not properly triable" by that court, and upon its own motion the court appointed Earl Watts, respondent herein, as co-guardian to serve with N.L. Dillow. The applicant, through his attorney, took exception to this order and reflected his notice of appeal.
Applicant, by his next friend, perfected his appeal on issues of law and fact.
Trial de novo was heard before the Superior Court. Applicant announced the purpose of the hearing was for the removal of Dillow as his guardian. The attorney for Dillow notified the court of Dillow's prior resignation as guardian and that the resignation was then on file in the County Court. Applicant then urged that in the motion to remove the guardian he also had asked specifically for the right to nominate a guardian of his choice. No name was offered or submitted by applicant, the only contention being that he had the right to nominate a guardian. Applicant conceded there had been no nomination presented in the County Court nor did he attempt to designate one in the Superior Court.
The issue rested squarely on the applicant's right under the facts presented to make a binding nomination in the County Court of a guardian of his choice.
On appeal to the Superior Court the evidence went to prove that the applicant was competent to nominate a guardian or co-guardian, to which the respondent excepted, moved dismissal of the appeal, demurred to the evidence, and rested.
The Superior Court found the applicant mentally competent to nominate a guardian of his choice and remanded the cause back to the County Court for further proceedings consistent with its judgment. From the order overruling respondent's motion for a new trial, respondent appeals.
Since this is a matter of first impression concerning 58 O.S. 1961, § 896, we must place a construction thereon which is in harmony with other statutes related to the subject, unless other statutes are repugnant, or incapable of being construed together.
A cardinal principle of statutory construction is that where the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning. State ex rel. Ogden v. Hunt, Okl., 286 P.2d 1088; Hines v. Winters, Okl., 320 P.2d 1114. A further requisite is that different legislative enactments dealing with the same subject must be construed together as a harmonious whole so as to give effect to each. Letteer v. Conservancy Dist., etc., Okl., 385 P.2d 796.
As we view section 896 the meaning and intent are clear. The plain wording of the statute leaves little for interpretation. Let us examine the language of *206 the statute by deleting certain words, as follows:
"Every person eighteen * * * or older who is of sound mind * * * may, * * * in the same manner as provided for the execution of wills, nominate a guardian * * *, which nomination shall, in the event of incompetency of said person, be binding on any court * * *."
This statute simply permits a person over the age of eighteen and in sound mind, who does not have a guardian at the time, to make a nomination of a guardian which will be binding upon the court having jurisdiction of such person, when and if this person subsequently becomes incompetent. The procedure for making such nomination legally recognizable requires nomination in the same manner as a testator in executing a will. Proof of the nomination must be accomplished in the same manner as a will is proved after the testator's demise. These requisites are nothing more than the mechanical steps by which validity of the nomination is determined. The fact that capacity to make a legally recognizable nomination of a guardian is measured by the same requirements as capacity to make a will cannot reasonably be read into the statute as a grant of authority permitting an adult incompetent to nominate his guardian.
The plain language of the statute contemplates incompetency arising after such nomination is made. The statute, supra, does not provide for a binding nomination after a person has been adjudged incompetent and a guardian appointed, and cannot be so construed. The statutory construction urged by the applicant would result in serious conflict with other settled law, and produce the absurd consequences creating the confusion enjoined in Forston v. Heisler, Okl., 341 P.2d 242. Such a construction necessarily would conflict with numerous other statutes which circumscribe the limits of the relationship of guardian and ward.
The limitation of 58 O.S. 1961, § 771, provides:
"The guardianship which is first lawfully granted, of any person residing without this State, extends to all the estate of the ward within the same, and excludes the jurisdiction of the county court of every other county."
This statute was construed in Powers v. Brown, Co. Judge, 122 Okl. 40, 252 P. 27, and the following rule was stated in syllabus 1:
"Where the county court of one county has found as a fact and there judicially determined the jurisdictional facts necessary to proceedings in the appointment of a guardian of the person and estate of minors, and has by order appointed a guardian for such minors, the jurisdiction thus acquired is exclusive, and such an order appointing such guardian is a bar to guardianship proceedings in another county court of this state."
Where, as in this case, the ward or some person purportedly acting in his behalf desires to remove a guardian, or replace a proper guardian for any of a variety of reasons, this result can be achieved by prevailing upon the incompetent to "nominate" a guardian of the ward's presumed choice.
58 O.S. 1961, § 772, provides:
"The court in its discretion, whenever necessary, may appoint more than one guardian of any person subject to guardianship, who must give bond and be governed and liable in all respects as a sole guardian."
In order to interpret section 896, supra, as applicant contends and remain in harmony with the above section would necessitate a modification by implication of the discretionary power of the county court to appoint more than one guardian.
In many instances, the binding nomination of an incompetent, whether planned or coincidental, might become intolerable to the prior appointed guardian. In this manner removal of a guardian could be accomplished *207 indirectly, even though this could be to the detriment of the ward. We conclude that the plain wording and intent of section 896, supra, was not to permit the incompetent to superimpose his will over the discretionary power of the county judge.
Further provision of our statutes, 15 O.S. 1961, § 24, states:
"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined."
This section has been construed to allow admission of the will of a deceased incompetent to probate, even though deceased was under guardianship when the will was executed. We observe that under section 896, supra, there is no exception granted prior to restoration.
This statute (section 24, supra,) has been applied in several cases. In Fixico v. Fixico, 186 Okl. 656, 100 P.2d 260, the statute was held to preclude enforceability of a purported contract entered into by one judicially declared an incompetent, although such contract had been acquiesced in by the guardian and the county court.
In Rudisaile v. Brace, 193 Okl. 302, 142 P.2d 986, we pointed out that both section 24, supra, and 58 O.S. 1961, § 851, relate primarily to property rights. The function of a guardianship is to handle the person and property of the ward.
In Bruner v. Staples, 172 Okl. 272, 44 P.2d 864, we held an alleged settlement and ratification of the guardian's acts, in connection with a purported settlement of a federal court case, by the incompetent did not divest the county court of authority to order an accounting. We specifically declared the settlement and ratification void, because the statute (then O.S. 1931, § 9404) precluded the incompetent from designating any power or waiving any right.
Section 24, supra, declares further that the ward cannot act until his restoration to capacity has been accomplished by a judicial determination. Thus, under statutes dealing with guardians and wards, the ward has no standing to perform such an act as designating a guardian. We do not construe section 896 as permitting an incompetent to nominate a guardian merely because a trial court determines such incompetent has sufficient mental capacity to know the nature and extent of his property and the objects of his bounty  the test of capacity for making a will.
To construe section 896 to permit appointment of a "nominated" guardian when a ward already is under legal guardianship would create conflict and confusion obviously not intended by the Legislature. Where two acts, or parts of acts, are susceptible of a construction which will give effect to both without doing violence to either, this construction should be adopted in preference to a construction which leads to the conclusion that there is a conflict. Smith v. S.W. Bell Tel. Co., Okl., 349 P.2d 646, 82 A.L.R.2d 454; Forston v. Heisler, Okl., 341 P.2d 252.
The conflict which will result inevitably between 15 O.S. 1961, § 24 and 58 O.S. 1961, § 896, under the construction sought to be placed upon such statute is apparent. The end result of such construction is effective destruction of the principle stated in syllabus 2 of Forston v. Heisler, supra:
"In construing statutes, harmony, not confusion is to be sought and when two acts or parts thereof are reasonably susceptible of a construction that will give effect to both and the words of each, without violence to either, it should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict."
Applicant in his answer brief has raised an issue not covered in respondent's *208 brief. Applicant contends respondent, who was appointed co-guardian by the County Court, is not a party to this appeal and therefore this appeal should be dismissed. Applicant argues that since respondent was appointed guardian to serve with another guardian, that respondent has no prerogative to remain sole guardian and that no contention is made by the applicant that respondent should be removed or replaced; and therefore respondent has no interest in this appeal.
To support his contention applicant cites Trapp v. Board of County Commissioners, 79 Okl. 214, 192 P. 566; Voris v. Robbins, 52 Okl. 671, 153 P. 120, and other cases generally adhering to the rule stated by syllabus 1 in Voris, supra:
"If the status of a party becomes so fixed in the trial court that no action of the appellate court, whether it be an affirmance, modification, reversal, or dismissal of the case on appeal, can then or thereafter affect or change the status of the party as fixed by the trial court, then he is not a necessary party on appeal."
Under the cited cases we must consider what effect or change in the status of the respondent is involved in the adjudication by the Superior Court.
We return to the primary issue: the right of one judicially declared incompetent and under guardianship to bind the county court by nomination of a guardian. As we have heretofore demonstrated, the choice by the applicant of an additional guardian to serve with the respondent may result in an intolerable situation. We can only conclude that respondent's status as guardian would be changed or affected and therefore hold that he is an interested party.
Judgment is reversed and cause remanded with directions to vacate the judgment of the Superior Court and enter judgment in conformity with judgment of the County Court.
The Court acknowledges the services of Owen Vaughn, who with the aid and counsel of Walt Allen and Robert B. Park, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BERRY, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.
HALLEY, C.J., JACKSON, V.C.J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY, and HODGES, JJ., concur.
DAVISON and LAVENDER, JJ., concur specially.
LAVENDER, Justice (concurring specially).
Although I concur in the result of the majority opinion, I must respectfully disagree with the reasoning assigned in that opinion to support the result.
The facts are briefly, while John D. Campbell, a resident of Seminole County, about ninety years of age and in poor health, was seriously ill in an Oklahoma City Hospital, the County Court of Oklahoma County after notice and a hearing at which Campbell was unable to attend, found that Campbell was unable to take care of himself and manage his estate, which was estimated to be of the value of about one million dollars. Whereupon the Oklahoma County Court appointed one Dillow as guardian of the person and estate of Mr. Campbell. Thereafter the proceeding was transferred to Seminole County, and Campbell, acting through an attorney, filed in the proceeding in Seminole County an application praying that Dillow be removed as guardian and that he, Campbell, be allowed to nominate a guardian subject to the approval of the county court. This application was denied by the county court, but the court on its own motion appointed Watts, the plaintiff in error, as "co-guardian" with Dillow. From this action of the county court, Campbell appealed. Pending the appeal, Dillow resigned. While that part of the *209 appeal concerning the failure to remove Dillow became moot upon his resignation, it was urged upon the Superior Court that the question of Campbell's right to nominate a guardian or "co-guardian" still remained. After considering a great deal of evidence touching upon the mental competency or capacity of Campbell to nominate a co-guardian, the Superior Court found that such capacity existed, and further that a co-guardian was necessary and remanded the cause to the county court with directions to that court to further proceed. From the judgment of the superior court, Watts appealed to this court.
I agree with the opinion of the majority to this extent: that the issue dispositive of this cause is whether Campbell had any right to nominate a guardian or co-guardian, and, if he had such right, whether he exercised it in the form and method prescribed by law. The majority opinion says that he had no such right because at the time he was already under guardianship as an "incompetent" and that title 58 O.S. 1961, § 896, which authorizes a person to nominate his guardian, was inapplicable. Let us consider said statute in its entirety:
"Every person eighteen (18) years of age or older who is of sound mind and not acting under duress, menace, fraud or undue influence, may, by writing executed and proved in the same manner as provided for the execution and proof of wills, nominate a guardian of his person and estate, or either, which nomination shall, in the event of the incompetency of said person, be binding on any court having jurisdiction of said guardianship." (Emphasis supplied.)
No case is found construing this statute, but by its very terms the statute makes the law concerning the execution and proof of wills applicable to the execution and proof of a written nomination of guardian by any person eighteen years of age or older who is of sound mind and not acting under duress, menace, fraud or undue influence. We note that 84 O.S. 1961, § 41, although not directly applicable to the execution of nominations of guardians, provides that:
"Every person over the age of eighteen years, of sound mind, may by last will, dispose of all his estate, real and personal, * * *" (Emphasis supplied.)
In the case of Wah-kon-tah-he-um-pah's Estate (Exendine v. Red Corn et al.), 108 Okl. 1, 232 P. 46, which involved the execution and proof of the will of an elderly Osage Indian woman who was at the time of the execution thereof under guardianship as being incompetent to manage her property, this court's syllabus reads as follows:
"The mere fact that a testator has been adjudged incompetent to manage his property and business affairs, and that such incompetency has not been judicially removed at the time of making a will, is not sufficient of itself to show a mental incompetency to make a will, nor does the existence of a guardianship of itself render one legally incapacitated to make a will.
"The question of mental capacity to make a will is not one of law but of fact.
"The time of the making and execution of a will is the period of time from which the mental capacity of a testator must be determined.
"The existence of a guardianship does not constitute legal incapacity to make a will, but is no more than evidence of the fact of incompetency, and may be overcome by parol proof that testator was mentally competent at the time the will was executed."
See also Peace v. Peace, 149 Okl. 123, 299 P. 451.
Logically, it seems to me, the same principles would be applicable in determining the mental capacity of a person eighteen years of age or over to make a written nomination of a guardian for himself in the manner provided in 58 O.S. 1961, § 896, supra.
*210 I am unable to agree with the majority's interpretation of the words found in the statute "* * * which nomination shall * * * be binding upon any court having jurisdiction of said guardianship." As I understand the majority opinion, it says in effect that the execution of a nomination of a guardian by one already under guardianship would operate to remove the acting guardian ipso facto, because the statute says the nomination would be "binding" on the court. I am unable to agree. The statute merely contemplates that one may nominate, not appoint, a guardian or a co-guardian, and that such nomination will be binding upon the court in a proceeding in which it subsequently appears the appointment of a guardian or co-guardian becomes necessary, either because the acting guardian dies, resigns or is removed, or because in the opinion of the county court the appointment of a co-guardian would benefit the estate. I see no conflict with the interpretation here accorded the above statute and the provisions of 15 O.S. 1961, § 24, which provides that "* * * a person of unsound mind can make no conveyance," etc. Section 896 clearly provides that a person must be of sound mind.
In summary, I believe the majority opinion is in error because it assumes that, as a question of law, all persons declared incompetent and over whom guardians are appointed by the county court are mentally unsound as a matter of law. The way I view it, the question of soundness of mind is a question of fact which the county court is certainly qualified to pass upon. I fail to see where any conflict with existing statutes or case-law would result in chaos if the above interpretation of Sec. 896 had been adopted as the majority view, especially in view of the fact that upon the return of this case to the county court Mr. Campbell could, in my opinion, make a written nomination in the form required by Sec. 896 and file an application with the county court for the appointment of such nominee as co-guardian. It would then be for the county court to determine within the exercise of its original jurisdiction the following questions: (1) Would it serve the best interest of Mr. Campbell for a co-guardian to be appointed at this time? (2) At the time of the execution of the nomination of a co-guardian was Mr. Campbell of sound mind and not acting under duress, menace, fraud or undue influence, and was the nomination executed as required by law? (3) Is the person nominated a suitable person and otherwise possessed of the qualifications prescribed by law to serve as a co-guardian of the person and estate of Mr. Campbell? I believe that if the county court answered all these questions affirmatively, then and only then would the nomination by Mr. Campbell of a person to serve as co-guardian be "binding" upon the court.
However, in the present instance, although Campbell's application to the county court to be allowed to nominate a guardian for himself raised the question of law as to the authority of a county court to allow an adult incompetent, such as Campbell, to nominate a guardian for himself, such application was not accompanied by a written nomination of guardian purportedly executed by Campbell in the manner prescribed by 58 O.S. 1961, § 896. Therefore, the question of fact as to Campbell's mental capacity to nominate a guardian for himself, in the only manner authorized by law, was not presented to the county court. The county court quite properly and correctly denied such application by sustaining a demurrer thereto without passing upon the question of Campbell's mental capacity to nominate a guardian for himself. For these reasons, the trial court committed reversible error in not sustaining the county court's denial of Campbell's application to nominate a guardian for himself.
For the above reasons, I therefore concur specially and only in the result of the majority opinion.