FIREMEN'S PENSIONS — HOW COMPUTED Compensation paid for the performance of ambulance service duties must be included within the base salary of each member of the fire department as of the date the particular member began performing such duties and began receiving the additional compensation for the performance of such duties. Subsequent to January 1, 1975, the contributions to the Firemen's Relief and Pension Fund required by 11 O.S. 373b [11-373b] (1975), is to be computed on the basis of the total salary paid each member of the department, with the compensation paid for the performance of ambulance service duties to be included in said salary. Prior to January 1, 1975, contributions are required only in those instances where the municipality had adopted an ordinance authorizing same under provisions of 11 O.S. 373 [11-373] (1971). Retirement pensions must be increased by one-half of the increase in the total salary of the regular fire fighters of the city from and after December 2, 1975, the compensation for ambulance service duties to be included within said salaries. The Attorney General has considered your request for an interpretative opinion of 11 O.S. 20.7 [11-20.7] (1975), as it relates to certain provisions of the Firemen's Relief and Pension Fund Act in the fact situation set forth in your letter requesting opinion. You relate a situation wherein a state municipality enacted an ordinance in the fall of 1973 providing for ambulance service and including such service within the regular duties and functions of the municipal fire department. You state that initial staffing of the ambulance service between the hours of 6:00 p.m. and 6:00 a.m. was on a voluntary basis with six members of the fire department having volunteered to be called back for such duty during those hours. Those firemen volunteering for call-back duty were paid $200 per month for such service by separate check out of Revenue Sharing Funds. In addition, they were paid time and one-half for all time spent when actually called back to the station for ambulance service. You state that subsequently, on December 2, 1975, the City Manager made it mandatory for all members of the fire department to assume ambulance call-back duties and provided further for all members to be compensated in the same manner as the original volunteers, by separate check from Revenue Sharing Funds. Finally, you state that no member of the fire department has ever been paid extra for his regular duty shift, only for call-back time during his off hours and that no monies have ever been paid for ambulance call-back time out of the fire department budget. Based upon the above fact situation, you have requested our opinion on the following questions: "1. Since the duties of the ambulance service have been made a part of the Fire Department by ordinance, should the amount of compensation paid for call-back time be made a part of the Fireman's base salary? "2. If the answer to the foregoing is yes, should this be from the time the ordinance was passed (November 19, 1973) and the six men were working on a voluntary basis, or March 17, 1975 when H.B. 1252 was signed by the Governor, or December 2, 1975 at which time it became mandatory that all members participate in the added duties. This question is posed in relation to 11 O.S. 364 [11-364]. "3. This question deals with 11 O.S. 373B [11-373B]. If the monies received for the call-back time is a part of his regular salary, should the contribution required under 11 O.S. 373B [11-373B] be deducted from the monies received ? If this is answered in the affirmative, should it be retroactive back to November 19, 1973, March 17, 1975 or December 2, 1975? "4. This question deals with 11 O.S. 389 [11-389]. If the monies received are declared a part of the base salary, how will this then apply to 11 O.S., Section 389? If it should be determined that it raises the base salary, should the retiree raises be retroactive to November 19, 1973 when there were only two regular firemen participating in the call-back compensation or December 2, 1975 when all six of the regular firemen were compelled to share the duty." Title 11 O.S. 20.7 [11-20.7] (1975), provides: "A. The governing body of any city, town or county may contract for ambulance service with any other city or town, county, person, firm or corporation or combination of them under such terms and conditions as may be agreed upon between the parties and in accordance with the requirements of the Interlocal Cooperation Act, Title 74 Oklahoma Statutes, 1001 to 1008, inclusive. Such contracts, if with a person, firm or corporation or combination thereof, shall provide for the carrying of liability insurance in the sum of not less than Fifty Thousand Dollars ($50,000.00) for coverage of personal injury and property damage. "B. Any employee of any city, town, county or public trust engaging in ambulance or emergency service provided by the employer shall be considered to be serving in regular line of duty and shall be entitled to all benefits of any pension fund or insurance benefits to which he might otherwise be entitled." (Emphasis added.) House Bill 1252, passed in the First Regular Session of the Thirty-fifth Oklahoma Legislature, now codified at 11 O.S. 20.7 [11-20.7] (1975), provided for an emergency effective date and became effective, by reason thereof, upon the signature of the Governor being affixed thereto, on March 17, 1975. The Oklahoma Supreme Court has consistently endorsed the cardinal principle of statutory construction that where the language of a statute is plain and unambiguous and the meaning is clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning. In Re Guardianship of Campbell, 450 P.2d 203, McVicker v. Board of County Commissioners of Caddo County, 442 P.2d 297. Section 11 O.S. 20.7 [11-20.7] is plain on its face and the intent of the Legislature that municipal employees engaging in ambulance service duties are to be considered to be serving in their regular line of duty is clear. A plain reading of subsection B of the above-cited statute would appear to render an affirmative answer to your first question. Additionally, the term "salary" is defined in Black's Law Dictionary as: "A reward or recompense for services performed. A stated compensation, amounting to so much by the year, month or of the fixed period, to be paid to public officers and persons in some private employments for the performance of official duties or the rendering of services of a particular kind, more or less definitely described, involving professional knowledge or skill or at least employment above the grade of menial or mechanical labor." There can be no question but that the performance of ambulance service duties became, subsequent to the effective date of Section 11 O.S. 20.7 [11-20.7], March 17, 1975, part of the regular duties of the employee performing same. Furthermore, you state that prior to the enactment of Section 20.7 ambulance service duties were designated part of the regular duties of the employee performing same by municipal ordinance. The fact that those duties have apparently always come within the description of the regular and, thus, official duties of the department employee performing same, either by statute or by municipal ordinance, considered together with that definition of the term salary, set forth above, compels the conclusion that any compensation paid the employee for the performance of ambulance service duties must be considered part of the base salary of the employee. The fact that the additional compensation paid for ambulance service duties has been paid from revenue sharing funds is immaterial. Section 1243 (a) of the Federal Revenue Sharing Act, 31 U.S.C.A. 1221, et seq., provides: "In order to qualify for any payment under subchapter I of this chapter for any entitlement period being on or after January 1, 1973, a State government or unit of local government must establish (in accordance with regulations prescribed by the Secretary, and, with respect to a unit of local government, after an opportunity for review and comment by the Governor of the State in which such unit is located) to the satisfaction of the Secretary that — "(4) It will provide for the expenditure of amounts received under subchapter I of this chapter only in accordance with the laws and procedures applicable to the expenditure of its own revenues. . . ." The Attorney General has heretofore held that the above-quoted language prohibits the use of revenue sharing funds for any purpose for which revenues of local governmental units cannot be used. 6 Okl.Op.A.G. 44. Thus, once received, revenue sharing funds become public funds and may be used for any authorized purpose in like manner as other funds of the local governmental unit. With regard to your second question, it appears, under the fact situation you relate, that the performance of ambulance service duties became part of the regular duties of each employee performing same, either by ordinance or statute, at that point in time when each particular employee assumed such duties. Therefore, the compensation paid for ambulance service duties became part of the base salary of each employee on the date the particular employee assumed such duties. Your third question involves the contribution from the salaries of fire department members to the Firemen's Relief and Pension Fund required by 11 O.S. 373b [11-373b] (1975). Section 373b, provides, in pertinent part: "A. Each city or town having a paid member of a fire department shall enact an ordinance authorizing the treasurer of such city or town to deduct monthly from the salary or wages of each member of the fire department of such city or town an amount equal to four percent (4%) of the monthly salary or wages paid to such member of the fire department. A four percent (4%) deduction shall be considered the mini- mum deduction. The members of a fire department, by a majority of the vote of its paid members, may vote to increase the amount of the deduction. The treasurer of each city or town shall deduct the authorized increase in deductions from the salary or wages of each paid member of the fire department. The treasurer of the city or town shall deposit monthly in 'The Firemen's Relief and Pension Fund' of the city or town the amount deducted from the salary or wages of each member of the fire department . . ." Having heretofore determined that the compensation paid fire department employees for the performance of ambulance service duties must be included within the base salary of each particular employee performing same, we conclude that the contribution required by Section 373b must be made from the total salary paid each employee, the compensation paid for ambulance service duties to be included therein. Section 373b, enacted in the First Regular Session of the Thirty-fifth Oklahoma Legislature, provided for an effective operative date of January 1, 1975. Prior to the enactment of Section 373b, 11 O.S. 373 [11-373] (1971), made provision for cities and towns to authorize, by municipal ordinance, the treasurer of the city or town to deduct from the salary of each member of the fire department a percentage of the employee's annual salary for deposit in the Firemen's Relief and Pension Fund. In contrast to the mandatory requirement for such deduction contained in Section 373b, however, the provision of Section 373 was discretionary in nature. In the event the city had such an ordinance requiring contribution to the Firemen's Relief and Pension Fund prior to the effective date of Section 373b, contributions to the Firemen's Relief and Pension Fund must be made in accordance with the provisions of such ordinance based on the total salary paid each member of the fire department. Under the fact situation you relate, compensation received for ambulance service duties should be included within the base salary of employees of the fire department for purposes of computation of the contribution to the Firemen's Relief and Pension Fund as follows: (1) For all members of the department from and after December 2, 1975, the date on which it became mandatory for all members of the department to assume such duties. (2) For those members of the department who had volunteered for ambulance service duties prior to December 2, 1975, from and after January 1, 1975, the effective date of 11 O.S.Supp. 1975, 373b. (3) For those members of the department who had volunteered for ambulance service duties prior to January 1, 1975, only in the event the municipality had enacted an ordinance pursuant to provisions of 11 O.S. 373 [11-373] (1971), requiring such a contribution. Your fourth question involves the mandatory increase or decrease in pensions required under 11 O.S. 389 [11-389] (1975). Title 11 O.S. 389 [11-389] (1975), provides, in pertinent part: "From and after the effective date of this act, any person receiving a pension, which was based upon a percentage of the average salary paid to him during the last thirty (30) or sixty (60) months of his service, shall have his pension, or his widow's pension, as the case may be, increased or decreased by one-half of all increases or decreases, which, after the effective date of this act, shall occur in the salary of the regular fire fighters in the city or town from which said person is receiving a pension. . . ." It is our opinion that the increase in the salary of regular fire fighters of the city in the instant case became effective December 2, 1975, the date it became mandatory for all members of the fire department to assume ambulance service duties. Therefore, retirement pensions should be increased by one-half of the increase in the salaries of the regular fire fighters as of that date. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Compensation paid for the performance of ambulance service duties must be included within the base salary of each member of the fire department as of the date the particular member began performing such duties and began receiving the additional compensation for the performance of such duties. Subsequent to January 1, 1975, the contribution to the Firemen's Relief and Pension Fund required by 11 O.S. 373b [11-373b] (1975), is to be computed on the basis of the total salary paid each member of the department, with the compensation paid for the performance of ambulance service duties to be included in said salary. Prior to January 1, 1975, contributions are required only in those instances where the municipality had adopted an ordinance authorizing same under provisions of 11 O.S. 373 [11-373] (1971). Retirement pensions must be increased by one-half of the increase in the total salary of the regular fire fighters of the city from and after December 2, 1975, the compensation for ambulance service duties to be included within said salaries. (William Don Kiser)